Filed 4/16/13

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **MICHAEL D. SCOTT,** <br><br>      **Plaintiff and Appellant,** <br><br> **v.** <br><br> **JPMORGAN CHASE BANK, N.A., et al.,** <br><br>      **Defendants and Respondents.** | **A132741** <br><br> **(Solano County** <br> **Super. Ct. No. FCS033424)** |

    BY THE COURT:

    It is ordered that the opinion filed herein on March 18, 2013, be modified as follows:

    The second sentence in the second paragraph on page one is amended to read:

    "In the published portion of our opinion, we conclude that the trial court properly took judicial notice of the fact and legal effect of the government's contract with JPMorgan, since Scott did not allege or argue in the trial court that the contract was inauthentic or otherwise reasonably subject to dispute."

    This modification effects no change in the judgment.

    The petition for rehearing is denied.

Date_____          _____P.J.

Filed 3/18/13 (unmodified version)
**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **MICHAEL D. SCOTT,**<br><br>    **Plaintiff and Appellant,**<br><br>v.<br><br>**JPMORGAN CHASE BANK, N.A., et al.,**<br><br>    **Defendants and Respondents.** | **A132741**<br><br>(Solano County<br>**Super. Ct. No. FCS033424**) |

Michael D. Scott (Scott) appeals from an order sustaining a demurrer to his second amended complaint without leave to amend. He contends he alleged facts sufficient to state a cause of action against respondent JPMorgan Chase Bank, N.A. (JPMorgan), primarily because JPMorgan allegedly did not have standing to foreclose on his property. He further alleges that the trial court erred in taking judicial notice of facts in a contract between JPMorgan and the federal government, by which JPMorgan claims to have obtained a beneficial interest under the deed of trust on Scott's property without assuming related liabilities.

Because a direct appeal cannot be taken from an order sustaining a demurrer, we exercise our discretion to review the trial court's decision as an appealable final judgment of dismissal. In the published portion of our opinion, we conclude that the trial court properly took judicial notice of the fact and legal effect of the government's contract with JPMorgan, since Scott made no showing in the trial court that the contract was not authentic or otherwise argued it was reasonably subject to dispute. We also conclude

---

[*]    Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.C. and II.D.

1

that, based on the allegations of the second amended complaint, and in light of the facts the court judicially noticed, the court did not err in sustaining the demurrer. In the unpublished portion of our opinion, we conclude that the court did not err in denying further leave to amend. The judgment will be affirmed.

## I. FACTS AND PROCEDURAL HISTORY

Scott received title to certain real property in February 2005. The following August, he obtained from First Magnus Financial Corporation (Magnus) a $975,000 construction loan, secured by a deed of trust on the property. In November 2007, Magnus assigned its interest under the deed of trust to Washington Mutual Bank (WaMu).

### A. *JPMorgan Becomes Beneficiary Under the Deed of Trust and Forecloses*

According to documents judicially noticed by the trial court, the federal government's Office of Thrift Supervision (OTS) issued an order on September 25, 2008, appointing the Federal Deposit Insurance Corporation (FDIC) as the receiver of WaMu. As set forth in a Purchase and Assumption Agreement between the FDIC and respondent JPMorgan dated as of September 25, 2008 (P&A Agreement), the FDIC then sold to JPMorgan "all of the assets" of WaMu (with specified exceptions), but not WaMu's liabilities for claims by borrowers.

Scott defaulted on his loan, and in January 2009 the California Reconveyance Company (CRC), as trustee under the deed of trust, caused the recording of a Notice of Default and Election to Sell the property. At the time, Scott purportedly owed $1,046,708.52 under the corresponding note. In April 2009, CRC caused a notice of trustee's sale to be recorded, providing notification that the property would be sold in May 2009.

### B. *Scott's Complaint and First Amended Complaint*

In April 2009, Scott filed a complaint in this case against JPMorgan (and perhaps others), but the complaint is not in the appellate record. A first amended complaint, filed in June 2009, asserted numerous causes of action against JP Morgan, WaMu, Magnus,

2

and Cobs Homes, essentially seeking relief on the ground that Scott had been fraudulently induced to enter into a subprime loan with Magnus.

JPMorgan filed a motion for judgment on the pleadings, arguing that, under the P&A Agreement, it did not assume any of WaMu's liabilities related to Scott's loan, JPMorgan complied with applicable provisions of the Civil Code, and Scott did not tender the amount owed under the note and deed of trust.

In support of its motion, JPMorgan sought judicial notice of: (1) a copy of the grant deed by which Scott obtained title to the property; (2) a copy of the deed of trust on the property, recorded August 18, 2005, identifying Magnus as the beneficiary; (3) a copy of the assignment of the deed of trust from Magnus to WaMu, recorded on November 5, 2007; (4) the OTS order appointing the FDIC as receiver of WaMu; (5) a copy of the P&A Agreement (attaching excerpts from the agreement and asserting the availability of its entirety at the FDIC Web site); (6) the notice of default and election to sell, recorded on or about January 14, 2009; and (7) the notice of trustee's sale, recorded on or about April 20, 2009. Judicial notice was sought under Evidence Code sections 451, subdivision (f), and 452, subdivisions (d), (g), and (h).

Of particular relevance to this appeal are the provisions of the P&A Agreement regarding the sale of WaMu's assets to JPMorgan. Section 3.1 of the P&A Agreement provided that the Assuming Bank (JPMorgan) purchased from the Receiver (FDIC) "all right, title, and interest of the Receiver in and to *all of the assets* (real, personal, and mixed, wherever located and however acquired) . . . of the Failed Bank [WaMu] whether or not reflected on the books of the Failed Bank as of Bank Closing [September 25, 2008]." (Italics added.) Although Section 3.5 of the P&A Agreement provided that JPMorgan did "not purchase, acquire or assume, or (except as otherwise expressly provided in this Agreement) obtain an option to purchase, acquire or assume under this Agreement the assets or Assets listed on the attached Schedule 3.5," Schedule 3.5 sets forth assets not relevant here.

As to WaMu's liabilities, Section 2.5 of the P&A Agreement provided that JPMorgan did not assume liability for borrower claims related to loans, or commitments

3

to lend, made by WaMu, held by WaMu, or purchased by WaMu.  Specifically, Section 2.5 reads:  "**Borrowers' Claims.**  Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by the Failed Bank [WaMu] prior to failure [September 25, 2008], or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank [JPMorgan]."

Scott filed an opposition to JPMorgan's motion and boilerplate objections to its request for judicial notice, asserting generally that the documents did not fall within the cited Evidence Code provisions.  He did not dispute that the P&A Agreement attached to the judicial notice request and published on the FDIC's Web site was authentic, accurate, and complete.

In November 2010, the trial court granted JPMorgan's motion for judgment on the pleadings, with leave to amend.

C.  *Scott's Second Amended Complaint*

Later in November 2010, Scott filed his second amended complaint against JPMorgan and the other defendants sued in the first amended complaint.  He asserted essentially the same causes of action, but added some allegations as to JPMorgan, contending:  the assignment of the deed of trust from Magnus to WaMu was invalid because the notary had no record of notarizing it; JPMorgan did not complete the transfer of the "[WaMu] assets from the FDIC to [JPMorgan]," so JPMorgan had no interest in the property; and yet JPMorgan employees spoke with Scott before and after JPMorgan "acquired the certain assets and liabilities of [WaMu] from the FDIC."

4

### 1. *Scott's Causes of Action*

The vast majority of Scott's purported causes of action are expressly based on fraud and other wrongdoing allegedly perpetrated to induce Scott to enter into the loan in August 2005, before JPMorgan obtained an interest in the property. By cause of action, Scott alleges: (1) violation of Business and Professions Code section 17200, based on defendants' untrue or misleading statements (regarding the terms and payment obligations, prepayment penalty, home value and ability to refinance, and nonreceipt of kickbacks and the like) and their failure to consider Scott's ability to pay; (2) violation of Financial Code section 4973 ("predatory lending") by acts perpetrated by Magnus, including approving construction loans to uninformed buyers, encouraging the use of false documentation to qualify unqualified borrowers for a loan, and making false statements; (3) fraud, based on statements made to Scott "in the origination of the [loan]" regarding the loan terms and value of his property; (4) breach of the implied covenant of good faith and fair dealing in the negotiation of the loan; (5) conversion, by inducing Scott to agree to the loan and inflating the value of his property to justify a larger mortgage and compel unjust monthly payments; (6) quiet title, seeking invalidation of the deed of trust due to fraud and undue influence employed to get Scott to take out the loan; (7) fraud in the inducement, based on promises made to induce Scott to agree to the loan; (8) unfair business practices, based on "fraudulent acts, business model or change of underwriting standards"; (9) breach of mortgage brokers' fiduciary duties in connection with Scott's entry into the loan; (12) "civil conspiracy" in the origination of the loan ; (13) "aiding and abetting," in that all defendants knew and encouraged what every other defendant did in regard to the origination of the loan; (14) unlawful joint venture, in an agreement to originate, purchase, assign, sell and transfer the loan; and (16) racial discrimination in regard to the financing Scott was provided .

The tenth cause of action – entitled "Wrongful Foreclosure" – contends that the foreclosure proceedings should be stopped (even though the property had already been sold) due to the defendants' "reprehensible conduct throughout this transaction." More particularly, Scott alleges that the foreclosure was wrongful in two respects. First, in

paragraph 104, he contends JPMorgan had no right to foreclose because there was no valid loan due to the alleged fraud in the origination process. Second, in paragraphs 105 through 107, he alleges JPMorgan had no right to foreclose because the "Notice of Default was defective," the amount stated as due and owing in the Notice of Default was incorrect, and interest was overcharged.

Lastly, the fifteenth cause of action for injunctive relief, and the eighteenth cause of action for unjust enrichment (there is no eleventh or seventeenth cause of action), seek specified remedies based on the foregoing claims.

### 2. *JPMorgan's Demurrer*

JPMorgan filed a demurrer to the second amended complaint, contending it was a rehash of Scott's earlier pleading, JPMorgan could not be liable for any of Magnus' loan origination acts because it did not assume this liability under the P&A Agreement, and the wrongful foreclosure claim failed because JPMorgan complied with its statutory notice requirements and Scott failed to tender amounts owing under the loan.

JPMorgan did not file a new request for judicial notice in connection with its demurrer, but the parties and the trial court proceeded as if the earlier request for judicial notice could be considered in ruling on the demurrer. Although JPMorgan's demurrer represented incorrectly that a "request for judicial notice" was being submitted concurrently, it also provided that its "motion" would be based on the "request for judicial notice" as well as "all documents, records, and pleadings on file."

Scott filed an opposition to the demurrer, urging that the court must accept as true his allegation that "defendants' notice of default was defective and in violation of Civil Code [section] 2924." He also argued that it would be inequitable to require a tender, in light of his allegations that JPMorgan's fraudulent acts had increased Scott's costs and risk and inflated the value of his home; alternatively, he proposed, the court should allow him to make the tender *after* entry of judgment. As to the materials JPMorgan had sought to be judicially noticed, Scott did not object to the absence of a new or separate request for judicial notice, but relied instead on his boilerplate objections to the earlier one and argued that the materials could not be considered in ruling on the demurrer.

6

In addition, Scott sought leave to amend in case the demurrer was sustained, based on the following "offer of proof:" "Plaintiff submits to the court that the discovery responses adduced in this case clearly demonstrate the active involvement of JPMorgan Chase's representatives with this transaction after the acquisition by JPMorgan Chase of Washington Mutual (again, however, plaintiff reasserts his objection to defendant's use and previous Request for Judicial Notice)."

3. *Court's Ruling*

After a hearing on May 5, 2011, the trial court affirmed its tentative ruling by a written order entered on May 20, 2011, sustaining the demurrer to the second amended complaint without leave to amend.

The court noted that JPMorgan's "Request for Judicial Notice of RJN Exhibits 1 through 7 was previously granted by Order filed herein in November 4, 2010." It then explained its decision on the demurrer as follows: "JPMorgan Chase acquired the assets of Washington Mutual from the Federal Deposit Insurance Corporation (FDIC) by purchase agreement dated September 25, 2008 ('Agreement') but did not assume any borrower liabilities. (RJN Ex. 4, 5). [Citations.] Plaintiff's SAC, at [¶] 49, alleges JP Morgan Chase acquired the assets of Washington Mutual. [¶] On November 7, 2007, First Magnus assigned its interest under the Deed of Trust to Washington Mutual. (RJN, Ex. 3). Proof or acknowledgement of an instrument by an out of state notary is authorized by Civil Code § 1182. The certificate of acknowledgement is prima facie evidence of the facts recited in the certificate, and the genuineness of the signature of each person by whom the writing purports to have been signed. Evidence Code [sections] 1451, 1452; 1453." The court also noted, relying on the documents judicially noticed, that Scott defaulted on his loan payments, a notice of default was recorded, as was a notice of trustee's sale. And, in another proceeding consolidated with this one, "the Complaint indicates JP Morgan Chase purchased the subject property at trustee's sale on May 7, 2009."

7

In addition, the court observed:  "Plaintiff has failed to allege tender, or make an offer to tender a sum sufficient to cure the default, and therefore has not met the requirements to obtain relief for wrongful foreclosure.  [Citations.]"

This appeal followed.

## II.  DISCUSSION

In our de novo review of an order sustaining a demurrer, we assume the truth of all facts properly pleaded in the complaint or reasonably inferred from the pleading, but not mere contentions, deductions, or conclusions of law.  (*Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 985-986 (*Buller*).)  We then determine if those facts are sufficient, as a matter of law, to state a cause of action under any legal theory.  (*Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 595.)

In making this determination, we also consider facts of which the trial court properly took judicial notice.  (E.g., *Avila v. Citrus Community College Dist.* (2006) 38 Cal.4th 148, 165, fn. 12.)  Indeed, a demurrer may be sustained where judicially noticeable facts render the pleading defective (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6), and allegations in the pleading may be disregarded if they are contrary to facts judicially noticed.  (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400; see *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264-266 (*Fontenot*) [in sustaining demurrer, court properly took judicial notice of recorded documents that clarified and to some extent contradicted plaintiff's allegations].)

In order to prevail on appeal from an order sustaining a demurrer, the appellant must affirmatively demonstrate error.  Specifically, the appellant must show that the facts pleaded are sufficient to establish every element of a cause of action and overcome all legal grounds on which the trial court sustained the demurrer.  (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879-880.)  We will affirm the ruling if there is any ground on which the demurrer could have been properly sustained.  (*Debro v. Los Angeles Raiders* (2001) 92 Cal.App.4th 940, 946 (*Debro*).)

We begin our analysis with whether the trial court erred in taking judicial notice.

A.  *Judicial Notice*

In ruling on the demurrer to the second amended complaint, the court took judicial notice of several documents (and facts therein), including the federal government's appointment of FDIC as WaMu's receiver and the P&A Agreement, which provides that the FDIC transferred to JPMorgan assets of WaMu, but not certain liabilities, as of September 25, 2008, after Scott had obtained his loan and before JPMorgan foreclosed. Although JPMorgan had not submitted a formal request for judicial notice in connection with the demurrer, the court and parties acknowledged JPMorgan's prior request, Scott had the opportunity to object, and, in any event, the court may take judicial notice on its own volition.  (See Evid. Code, § 455, subd. (a); *Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374 (*Joslin*) [reviewing propriety of judicial notice in ruling on demurrer, even though record did not contain request for judicial notice].)

Scott contends that the court should not have taken judicial notice of the P&A Agreement or the facts therein.  At least two subdivisions of Evidence Code section 452, however, provided authority for the judicial notice taken in this case.  (Except where otherwise indicated, all statutory references hereafter are to the Evidence Code.)

First, section 452, subdivision (c) provides that judicial notice may be taken of "[o]fficial acts of the legislative, executive, and judicial departments of the United States and of any state of the United States."  This subdivision "enables courts in California to take notice of a wide variety of official acts. . . . [and] an expansive reading must be provided to certain of its phrases[;] included in 'executive' acts are those performed by administrative agencies."  (Simons, California Evidence Manual (2013) Judicial Notice § 7:11, p. 558.)  Scott does not dispute that official acts of the FDIC may be subject to judicial notice under section 452, subdivision (c).  As JPMorgan argues, the FDIC's official acts of seizing WaMu's assets and publishing the P&A Agreement are judicially noticeable.  Moreover, as explained *post*, the FDIC's official act of transferring certain WaMu assets (but not certain liabilities) to JPMorgan as of September 25, 2008 – as

9

*evinced* by the P&A Agreement – is an official act subject to judicial notice under section 452, subdivision (c) under the circumstances of this case.[1]

Second, section 452, subdivision (h) provides that judicial notice may be taken of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." In this case, the fact of the P&A Agreement and the fact of the transfer to JPMorgan of WaMu assets, but not liabilities for borrower's claims, are not reasonably subject to dispute and are capable of ready determination, particularly since Scott did not question with specificity the authenticity, completeness, or legal effect of the P&A Agreement posted on the official FDIC Web site. Numerous federal courts have taken judicial notice of the P&A Agreement on a similar basis.[2]

---

[1] In its respondent's brief, JPMorgan criticizes Scott for not addressing subdivision (c) of section 452. This is ironic, since JPMorgan did not *seek* judicial notice in the trial court based on subdivision (c) of section 452, but on subdivisions (d), (g), and (h), along with section 451, subdivision (f). Nonetheless, JPMorgan's failure to rely on subdivision (c) in the trial court does not compel us to find the court's grant of judicial notice erroneous, for three reasons. First, Scott's appellate briefs do not make this argument. Second, the trial court's ruling will be affirmed if there is any lawful ground to support it. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742; see also *StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, 457, fn. 9 [in reviewing demurrer ruling, appellate court may consider facts judicially noticed by the trial court or those which the trial court properly could have noticed] (*StorMedia*); Evid. Code, § 459.) Third, as stated in the text, we agree with JPMorgan that judicial notice was also proper under section 452, subdivision (h), a ground JPMorgan *did* cite. We need not and do not decide whether judicial notice would have also been proper under section 451, subdivision (f) [universally known facts] or section 452, subdivision (g) [common knowledge within the jurisdiction].

[2] Rule 201(b) of the Federal Rules of Evidence, which permits judicial notice of a fact that is "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," is akin to California Evidence Code section 452, subdivision (h), which permits judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." Under the federal rule, courts have taken judicial notice of the P&A Agreement. (*Argueta v. JPMorgan Chase* (E.D. Cal. 2011) 787 F.Supp.2d 1099, 1103 [judicial notice taken of P&A Agreement]; *Rosenfeld v. JPMorgan Chase Bank, N.A.*

10

Scott argues that judicial notice was improper because, while judicial notice may be taken of public records, it may not be taken of the facts asserted within them.  (E.g., *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1375 ["While courts take judicial notice of public records, they do not take notice of the truth of matters stated therein"] (*Herrera*); *Joslin, supra,* 184 Cal.App.3d at p. 374 ["Taking judicial notice of a document is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning"]; see *Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063-1065 [court could not take judicial notice of the truth of conclusions within a report from the United States Surgeon General regarding the health effects of smoking or the truth of matters reported in a newspaper article] (*Mangini*), overruled on other grounds in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1262, 1276.)

The distinction that Scott draws, however, is immaterial to this case.  Where, as here, judicial notice is requested of a *legally operative* document – like a contract – the court may take notice not only of the fact of the document and its recording or publication, but also facts that clearly derive from its *legal effect*.  (*Fontenot, supra,* 198 Cal.App.4th at p. 265.)  Moreover, whether the fact derives from the legal effect of a

---

(N.D. Cal. 2010) 732 F.Supp.2d 952, 959 [judicial notice taken of the P&A Agreement, as a matter of public record]; *McCann v. Quality Loan Service Corp.* (W.D. Wash. 2010) 729 F.Supp.2d 1238, 1241 ["the Court takes judicial notice of the P&A Agreement because it is a public record and not the subject of reasonable dispute"]; *Allen v. United Fin. Mortgage Corp.* (N.D. Cal. 2009) 660 F.Supp.2d 1089, 1093 [judicial notice taken of the P&A Agreement, even though several pages were missing from the submission by defendant, because the entire P&A Agreement is available online from the FDIC's Web site]; *Coward v. JP Morgan Chase Bank*, 2013 U.S. Dist. LEXIS 22412, (E.D. Cal. Feb. 19, 2013) at *7-9 [judicial notice taken of P&A Agreement]; *In re Sharp*, Case No. 09-13980, A. P. No. 10-1032, 2011 Bankr. LEXIS 2841, at *3, fn. 1 (N.D. Cal. Bk. Jul. 19, 2011) [same]; *Jarvis v. JP Morgan Chase Bank, N.A.*, 2010 WL 2927276, at *1, 2010 U.S. Dist. LEXIS 84958, at *3  (C.D. Cal. July 23, 2010) [judicial notice taken of OTS Order and P&A Agreement, which were available on government Web sites]; *Molina v. Wash. Mut. Bank*, No. 09-CV-00894-IEG (AJB), 2010 U.S. Dist. LEXIS 8056, at *8 (S.D. Cal. Jan. 29, 2010) [judicial notice taken of P&A Agreement].)

11

document or from a statement within the document, the fact may be judicially noticed where, as here, the fact is not reasonably subject to dispute.

Judicial notice of the legal effect of legally operative documents was discussed at length by our Division One colleagues in *Fontenot*. There, the court explained: "[C]ourts have taken judicial notice not only of the existence and recordation of recorded documents but also a variety of matters that can be deduced from the documents. In *Poseidon* [*Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1117], for example, the court affirmed the trial court's taking judicial notice, in sustaining a demurrer, of the parties, dates, and legal consequences of a series of recorded documents relating to a real estate transaction. [Citation.] Although the court recognized that it would have been improper to take judicial notice of the truth of statements of fact recited within the documents, the trial court was permitted to take judicial notice of the legal effect of the documents' language when that effect was clear. [Citation.]" (*Fontenot, supra*, 198 Cal.App.4th at p. 265.) After giving additional examples, the court in *Fontenot* continued: "Strictly speaking, a court takes judicial notice of facts, not documents. (Evid. Code, § 452, subds. (g), (h).) When a court is asked to take judicial notice of a document, the propriety of the court's action depends upon the nature of the facts of which the court takes notice from the document. . . . Taken together, the decisions discussed above establish that a court may take judicial notice of the fact of a document's recordation, the date the document was recorded and executed, the parties to the transaction reflected in a recorded document, and the document's legally operative language, assuming there is no genuine dispute regarding the document's authenticity. From this, the court may deduce and rely upon the legal effect of the recorded document, when that effect is clear from its face." (*Ibid*.)

Accordingly, *Fontenot* ruled, the trial court did not err at the demurrer stage in taking judicial notice of the identity of the beneficiary of a deed of trust, based on the designation of the beneficiary in the deed of trust, "since its status was not a matter of fact existing apart from the document itself." (*Fontenot, supra*, 198 Cal.App.4th at p. 266.) The deed of trust, as a legally operative document, designated the beneficiary,

12

and therefore the identity of the beneficiary was not reasonably subject to dispute. (*Ibid*.) Other matters noticed by the trial court could be inferred from the text or legal effect of the documents as well. (*Ibid*.)

Here, in line with *Fontenot*, the trial court in this case did not abuse its discretion in taking judicial notice of the OTS Order, the P&A Agreement, *and* the legal effect of those documents in transferring to JPMorgan the stated assets of WaMu, but none of its liabilities for borrowers' claims, as of September 25, 2008. The P&A Agreement expressly provided that this was the intent of the parties to the agreement, and that was its legal effect. These facts therefore derive from the legal effect of the documents themselves, rather than any disputed hearsay statement of fact within them. Moreover, there is no allegation in the second amended complaint that the P&A Agreement is not authentic, and its authenticity is buttressed by its posting on the official FDIC Web site.[3]

None of the cases on which Scott relies is inconsistent with our conclusion that judicial notice can be taken of the legal effect of the P&A Agreement. In *Herrera*, for example, the court merely held that judicial notice could not be taken of the fact that a foreclosing bank was the beneficiary under a deed of trust, where the judicial notice was to be based on disputed hearsay statements *within* a substitution of trustee form and an assignment of the deed of trust: it was improper to take judicial notice based on the substitution of trustee form, because the recital in the document that the bank "is the

---

[3] Scott's sole objection in the trial court was the boilerplate objection that "this document" was not the type of document of which judicial notice may be taken. Scott belatedly argues *in this appeal* that JPMorgan did not sufficiently authenticate the documents attached to its request for judicial notice, because we should not accept a financial entity's representation that documents are in fact true copies of the originals. However, the request for judicial notice averred, under penalty of perjury, that the copies were "true and correct," and Scott provides no authority that an assertion under penalty of perjury should be disregarded merely because it is made by someone on behalf of a bank. While the request for judicial notice does not explicitly state the factual foundation for this representation, it does refer to a link on the FDIC Web site, by which the authenticity of the document can be verified. In the absence of any indication in the record that the document has been falsified, or any specific objection in the trial court, the averment of authentication and the independent means of verification were sufficient.

13

present beneficiary" was hearsay and disputed; it was improper to take judicial notice based on the assignment of the deed of trust, because, even though the document recited that the bank was assigned all beneficial interest under the deed of trust by a predecessor bank, its recital that the *predecessor* bank was successor to the original beneficiary was hearsay, so the overall truthfulness of the assignment of the deed of trust remained subject to dispute as well. (*Herrera, supra,* 196 Cal.App.4th at p. 1375.)

Thus, *Herrera* did not hold that judicial notice cannot be taken of the legal effect of a legally operative document (like the assignment of the deed of trust, or, here, the P&A Agreement); it simply held that it could not be done in *that* case, because the vitality of the assignment was reasonably subject to dispute without independent proof that the party assigning the interest had the authority to do so. (*Herrera, supra,* 196 Cal.App.4th at p. 1375; see *Fontenot, supra*, 198 Cal.App.4th at pp. 266-267 & fn. 7 [distinguishing *Herrera* on this ground].) Here, by contrast, Scott fails to show any reasonable dispute that WaMu held the beneficial interest in Scott's deed of trust when the FDIC transferred WaMu's relevant assets to JPMorgan: to the contrary, Scott alleges that after Magnus became insolvent WaMu notified him that WaMu "retained custody" of his loan, and he does not allege any well-pleaded facts from which the invalidity of the assignment might reasonably be inferred.[4] *Herrera* poses no barrier to taking judicial notice of facts deriving from the legal effect of the P&A Agreement.

Similarly distinguishable is *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, in which the court held that judicial notice could not be taken

---

[4] In his opening brief, Scott says the second amended complaint alleges "fatal holes in the chain of title from [Magnus's] transfer of the Deed of Trust to WaMu, due to what amounts to be an unprovable (false) notarization, and substitution of the original first page of the Deed of Trust." His pleading, however, merely alleges that Scott "contends" the assignment of the deed of trust from Magnus to WaMu was invalid because the notary had no record of notarizing it, and the first page of the deed of trust was different. An allegation of what Scott "contends" is not an allegation of fact, and there is no factual allegation explaining any difference in the substituted page that would nullify the assignment. Moreover, Scott provides no legal authority for the proposition that either the absence of a notarization record or the substitution of a page of the deed of trust, under the facts alleged, would render the assignment void.

14

of the meaning or enforceability of a letter, where the parties disputed whether the letter memorialized or constituted a contract, and the meaning and enforceability of the letter was reasonably subject to dispute. (*Id*. at pp. 114-116.) Because judicial notice could not be taken of the meaning of the letter based on the document alone, the court could not take judicial notice of the proper interpretation of the letter submitted in support of a demurrer. (*Id*. at p. 115.)

In the matter before us, however, neither the enforceability of the P&A Agreement nor its meaning is reasonably subject to dispute. The second amended complaint does not allege that the P&A Agreement is unenforceable, or that it did not transfer WaMu's assets (but not liabilities) to JPMorgan as of September 25, 2008. Nor is there any specific factual allegation from which we might infer that the P&A Agreement is unenforceable or susceptible of a different meaning.[5] Moreover, the P&A Agreement has already been the subject of judicial interpretation by multiple courts, which have reached the conclusion that the P&A Agreement is enforceable, precludes JPMorgan's liability for borrowers' claims, and justifies dismissal of borrowers' claims at the pleading stage. (E.g., *Hanaway v. JPMorgan Chase Bank, N.A.* (C.D. Cal. Feb. 15, 2011) 2011 U.S. Dist. LEXIS 21374 at *8-9 [dismissing claims against JPMorgan related to borrower's loan transaction with WaMu, and citing numerous other federal decisions reaching the same conclusion] (*Hanaway*); see *Yeomalakis v. FDIC* (1st Cir. 2009) 562 F.3d 56, 60 [because JPMorgan's P&A Agreement retained for the FDIC any liability associated with borrower claims for relief, the FDIC rather than JPMorgan is the appropriate party in interest] (*Yeomalakis*); see also § 451, subd. (a) [trial court shall take judicial notice of federal decisional law].) Under these circumstances, the court did not abuse its discretion in taking judicial notice of the P&A Agreement and its transfer of WaMu's assets to JPMorgan without transferring WaMu's relevant liabilities.

---

[5] Scott alleged in vague conclusory terms that JPMorgan had not "completed" the FDIC's transfer of WaMu's assets to JPMorgan and, on that basis, JPMorgan had no beneficial interest in his property. He offered no factual basis for that conclusion, and it is inconsistent with his other allegations. At any rate, his contention does not dispute the enforceability or interpretation of the P&A Agreement. To the extent it is germane to his other arguments, we address it *post*.

Also inapposite is *Joslin, supra,* 184 Cal.App.3d 369. There, the question was whether deposition testimony could be considered in ruling on a demurrer. (*Id*. at p. 373.) The court, noting that "[t]aking judicial notice of a document is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning," ruled that "the trial judge could accept the truth of the facts stated in the . . . deposition only to the extent they were not or could not be disputed." (*Id*. at pp. 374-375.) Thus, facts disclosed by the deposition and not disputed were properly considered in ruling on the demurrer, and facts disclosed by the deposition that were disputed could not be. (*Id*. at pp. 375-376.)

*Joslin* is distinguishable, since it dealt with facts asserted by parties in a deposition, not facts deriving from the independent legal significance of a contract. In any event, just as facts that were not disputed in *Joslin* could be considered in ruling on a demurrer, the facts that are not disputed or not reasonably subject to dispute in this case – the existence, enforceability, and legal effect of the P&A Agreement – were properly considered in ruling on JPMorgan's demurrer.[6]

---

[6] In *Mangini, supra,* 7 Cal.4th 1057, it was ruled that the court could not judicially notice the truth of conclusions within a report from the United States Surgeon General regarding the health effects of smoking or the truth of matters reported in a newspaper article. (*Id*. at pp. 1063-1065.) *Mangini* did not, however, address legally operative documents, such as a recorded assignment or contract. In *StorMedia, supra,* 20 Cal.4th 449, the court cited *Joslin* for the proposition that "[w]hen judicial notice is taken of a document, however, the truthfulness and proper interpretation of the document are disputable." (*StorMedia,* at p. 457, fn. 9.) The court *granted* an implicit request for judicial notice that was unopposed, without applying the principle. (*Ibid*.) In *Searles Valley Minerals Operations, Inc. v. State Bd. of Equalization* (2008) 160 Cal.App.4th 514, at page 519, the court ruled that judicial notice could not be taken of "materials contained on Web site pages" of the American Coal Foundation and the United States Department of Energy pursuant to section 452, subdivision (h), where no legal authority was cited for taking judicial notice from the Web sites and, "although it might be appropriate to take judicial notice of the existence of the Web sites, the same is not true of their factual content." (Italics omitted.) As we explain in the text, the rule against judicial notice of the content of a document is inapplicable here, where we are concerned with judicial notice of the undisputed legal effect of a legally operative document.

16

Nor is the federal district court's decision in *Mena v. JPMorgan Chase Bank* (N.D. Cal. Sept. 7, 2012) 2012 U.S. Dist. LEXIS 128585 (*Mena*), on which Scott also relies, contrary to our conclusion. In *Mena*, the plaintiffs had two loans from WaMu, secured by deeds of trust naming WaMu as the original lender/beneficiary. Plaintiffs alleged that WaMu then transferred its interests to a third party, based on certain SEC filings. JPMorgan, however, argued that WaMu's interests had instead been transferred to JPMorgan by the FDIC pursuant to the P&A Agreement. (*Id*. at *3-4 & fn. 10.) After foreclosure proceedings were commenced based on JPMorgan's purported interest under the deed of trust (and transfer of that interest to third parties), the plaintiffs sued, asserting claims including wrongful foreclosure. (*Id*. at *4-6.) JPMorgan moved for dismissal, seeking judicial notice of documents including the P&A Agreement. (*Id*. at *9.) In deciding whether the plaintiffs had stated a claim based on JPMorgan's unlawful initiation of the nonjudicial foreclosure process, the court concluded that it could take judicial notice of the P&A Agreement, but it could not take judicial notice that the effect of the agreement was to transfer the beneficial interest under the deed of trust to JPMorgan, due to the *specific* allegations in the complaint (supported by SEC filings) that WaMu's interest had been transferred to a third party before the FDIC transferred WaMu's assets to JPMorgan. (*Id*. at *24.)[7]

---

[7]     The court in *Mena* stated: "And although the court notices the September 2008 Purchase and Assumption Agreement between Chase and the FDIC Receiver of WaMu's assets, [footnote] the court may not notice, as undisputed fact, that the effect of this agreement was to transfer to Chase the beneficial interest in question, that interest already having been 'spun off' according to the Complaint. It is not clear from the Complaint or the noticed documents whether Chase properly owned the beneficial interest that it purported to transfer in the first and second Assignment of DOT. [Footnote.] The allegations of false signatures to which Defendants have not responded further strengthen Plaintiffs' allegation of wrongful conduct." (*Mena, supra,* 2012 U.S. Dist. LEXIS 128585, at *24.) Elsewhere the court explained: "The court agrees with the premise . . . that judicial action may be used to challenge a nonjudicial foreclosure process where the *specific* facts alleged in the complaint, taken as true at the pleading stage, demonstrate a failure to effect a valid transfer of beneficial interest in a manner than renders void the initiation of nonjudicial foreclosure." (*Id*. at *11, italics added.)

17

*Mena* is readily distinguishable from the matter at hand. In *Mena*, the plaintiffs had alleged specific facts to support the inference that JPMorgan did not obtain WaMu's interest in the deed of trust under the P&A Agreement. Here, by contrast, Scott alleges no specific facts, resorting to a mere conclusory assertion that JPMorgan had no interest in the deed of trust securing the property. It was not an abuse of discretion for the trial court in this case to take judicial notice of the obvious legal effect of the P&A Agreement – to transfer to JPMorgan the assets of WaMu that included its interests in deeds of trust.

In sum, whether the fact to be judicially noticed is the document or record itself (e.g. the existence of the P&A Agreement), the legal effect of the document (its transfer of assets but not liabilities to JPMorgan), a fact asserted within the document (the transfer), or an act by a government agency (the transfer by the FDIC), the essential question is whether the fact to be judicially noticed is not reasonably subject to dispute. Here, the court did not abuse its discretion in concluding that the fact of the FDIC's transfer to JPMorgan of "all of" WaMu's assets, but not its liabilities for borrower's claims, as of September 25, 2008, was not reasonably subject to dispute in light of the face of the P&A Agreement, its posting on the official FDIC Web site, the allegations (or lack thereof) in Scott's second amended complaint, the arguments of the parties, and the numerous federal judicial decisions accepting that fact in the context of motions to dismiss.[8]

Finally, our ruling today is consistent with the very recent decision of our Division Two colleagues in *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872 (*Jolley*). In *Jolley*, defendant Chase Home Finance, LLC (Chase) had sought summary judgment on claims brought by the plaintiff borrower. In support of its motion,

---

[8]   Indeed, section 452, subdivision (c) permits judicial notice of official government *acts*. This is not a situation where the statutory provision permits judicial notice only of a record or document, and the question becomes whether statements of fact *within* the document are worthy of judicial notice as well. The question is simply whether the fact of the government's action (transferring WaMu's assets but not its liabilities to JPMorgan) has been sufficiently evinced by the document that was submitted to establish that fact (the P&A Agreement). It has been in this case, since the authenticity and effect of the P&A Agreement cannot reasonably be disputed, for reasons discussed *ante*.

18

Chase requested judicial notice of its acquisition of some of WaMu's assets based on the P&A Agreement, attaching a purported copy of the P&A Agreement to its attorney's declaration and referencing the FDIC Web site on which the agreement is posted. (*Id*. at pp. 882-883.) Unlike Scott in this case, the plaintiff in *Jolley* objected to the judicial notice request on the specific ground that the document attached to the declaration was *not* the complete document governing Chase's purchase of WaMu assets, and submitted a declaration explaining that this belief was based on personal knowledge of a longer version, which the FDIC refused to produce. (*Id*. at p. 883.) The appellate court in *Jolley* concluded it was error for the trial court to take judicial notice of the P&A Agreement and Chase's acts of acquiring WaMu's assets but not its liabilities: "the content and legal effect of the P&A Agreement could not properly be determined on judicial notice under California law. . . . [a]nd certainly not here." (*Id*. at p. 887.)

*Jolley* is obviously distinguishable on its facts from the matter at hand. In *Jolley*, the P&A Agreement and its legal effect were reasonably subject to dispute because the opposing party insisted that the copy attached to the attorney's declaration was *not the actual P&A Agreement*, based on personal knowledge as set forth in a declaration under penalty of perjury. In our case, by contrast, Scott did not dispute in the trial court that the copy attached to counsel's declaration and on the FDIC Web site is the actual P&A Agreement. Since Scott on appeal fails to show that the P&A Agreement (or even its legal effect) was reasonably subject to dispute on this or any other basis in the trial court, he fails to show that the court erred in taking judicial notice.

Indeed, in our view, the overarching theme of both *Jolley* and this case are in accord: judicial notice can be taken of matters not reasonably subject to dispute, but cannot be taken of matters shown to be reasonably subject to dispute. As *Jolley* notes, the mere fact that a statement appears on a web page does not mean that it is not reasonably subject to dispute. (*Jolley, supra*, 213 Cal.App.4th at p. 889; *Huitt v. Southern California Gas. Co*. (2010) 188 Cal.App.4th 1586, 1605, fn. 10.) And if the information on the Web site is reasonably disputed by the parties, it is not subject to judicial notice. (*Jolley,* at p. 889; *L.B. Research & Education Foundation v. UCLA*

19

*Foundation* (2005) 130 Cal.App.4th 171, 180, fn. 2 [where the parties submitted dueling requests for judicial notice "comprised of printouts from various Web sites maintained by UCLA and the University of California," the information is not subject to judicial notice because it is subject to interpretation].) But based on the record in the case before us, the fact of the FDIC's act of transferring assets (but not liabilities) to JPMorgan, as evinced by the P&A Agreement attached to the request for judicial notice and published to the public on the official FDIC Web site, was not shown by Scott to be subject to reasonable dispute in the trial court.[9]

The trial court in this case did not err in taking judicial notice of the fact that the FDIC transferred assets, but not liabilities, of WaMu as of September 25, 2008, to JPMorgan, as set forth in the provisions of the P&A Agreement.

B. *Legal Significance of the Facts Judicially Noticed*

Having concluded that the court properly took judicial notice of the facts that (1) JPMorgan received "all right, title, and interest of the Receiver in and to all of the assets (real, personal and mixed, wherever located and however acquired) . . . of

---

[9]      *Jolley* also acknowledged the broad scope of section 452, subdivision (c) pertaining to judicial notice of official government acts, but did not "understand a contract with a private bank to come within that subdivision." (*Jolley, supra*, at p. 887.) We need not and do not decide whether every contract between a government agency and a private entity will be subject to judicial notice. On the record before us, the P&A Agreement was not just any contract: it was the official disposition of the assets and liabilities of a savings bank unable to pay its obligations to creditors and depositors, pursuant to a federal government order of receivership for the purpose of liquidation under a federal statute, published on the FDIC Web site to give vital and reliable notice to the public. Furthermore, we focus not on the contractual form of the document, but on the undisputed nature of the official *act* of transfer that it *evinces*, to bring  section 452, subdivision (c) into play. In any event, we do not rely solely on subdivision (c) to uphold the judicial notice in this case. On another note, *Jolley* stated:  "In sum, we hold that judicial notice was not properly taken of the content of the P&A Agreement *even if there was no dispute* about its authenticity. A fortiori here, where the very authenticity of the Agreement was in dispute." (*Jolley,* at p. 889, italics added.) The seemingly broad brush of this comment is limited by its factual context, however; certainly *Jolley* did not decide the propriety of judicial notice under circumstances that were not before it, but are now before us.

20

[WaMu]" (except for certain assets not germane here, as set forth *ante*) in September 2008 and (2) JPMorgan did not assume liability for borrower claims related to loans, or commitments to lend, made or held by WaMu, as of September 25, 2008, we now consider how those facts affect whether Scott has stated a cause of action.

Scott purported to assert 16 causes of action in his second amended complaint, each of which we discussed *ante*. Many of these purported "causes of action" are really just alternative legal theories, or requests for a particular remedy (injunctive relief) or imposition of joint liability (aiding and abetting, conspiracy, joint venture), rather than a distinct cause of action. Giving Scott's pleading the broadest construction to which it is entitled at the demurrer stage, we conclude that Scott sought relief against JPMorgan on the following bases.

### 1. *Wrongdoing by Others in Loan Negotiation and Origination*

The second amended complaint seeks recovery against JPMorgan in part for the fraud and other wrongdoing perpetrated *by Magnus and others* in connection with Scott's entry into the loan agreement, based on the fact that JPMorgan is a successor to WaMu's interest in the deed of trust. We agree with JPMorgan and the trial court that this liability is foreclosed as a matter of law by the legal effect of the P&A Agreement, which provided that JPMorgan did not assume liability for borrower claims related to loans or loan commitments made by WaMu, or made by a third party (like Magnus) and purchased or held by WaMu.

There is no dispute that the FDIC, as conservator or receiver, may sell the assets of a failed bank while retaining its related liabilities. (See, e.g., *Kennedy v. Mainland Sav. Ass'n* (5th Cir. 1994) 41 F.3d 986, 990-991; *Payne v. Security Sav. & Loan Assn., F.A.* (7th Cir. 1991) 924 F.2d 109, 111 ["This design facilitates the sale of a failed institution's assets (and thus helps to minimize the government's financial exposure) by allowing the [FDIC] to absorb liabilities itself and guarantee potential purchasers that the assets they buy are not encumbered by additional financial obligations"].) Furthermore, in examining the same provision in the P&A Agreement that is at issue in this case, federal courts have concluded that JPMorgan has no liability as a matter of law. (E.g., *Ansanelli*

21

*v. JPMorgan Chase Bank, N.A.* (N.D. Cal. Mar. 28, 2011) 2011 U.S. Dist. LEXIS 32350, at *6 ["Chase is not responsible for any liability of *WaMu* related to loans made by WaMu prior to September 25, 2008, the date of assumption . . . ."]; *Javaheri v. JPMorgan Chase Bank, N.A.* (C.D. Cal. Jan. 11, 2011) 2011 U.S. Dist. LEXIS 4249, at *8-9 ["[B]ecause JPMorgan expressly disclaimed assumption of liability arising from borrower claims against WaMu, those actions which predate the P&A Agreement cannot be brought against JPMorgan"].) Rather, the FDIC "was and remains the appropriate party in interest." (*Yeomalakis, supra,* 562 F.3d at p. 60.)

### 2. *JPMorgan's Own Acts Prior to Foreclosure*

Scott also suggests that JPMorgan could be liable for its *own acts* in connection with his entry into the loan agreement. The second amended complaint, however, does not allege any particular act by JPMorgan in this regard. Scott points us instead to his boilerplate allegations that all "defendants" are responsible for the acts of all the other "defendants," as well as his conspiracy, aiding and abetting, and joint venture contentions as to the "defendants." The pleading's conclusory statements as to all "defendants" are insufficient to state a cause of action against JPMorgan, in light of the allegations and judicially noticed documents indicating that the loan was negotiated on behalf of Magnus, without any mention of JPMorgan. In other words, the only inference from the allegations of Scott's pleading *and* the facts properly subject to judicial notice is that JPMorgan was not involved in the negotiation and origination of the loan.

Similarly, Scott contends JPMorgan could be liable for its own acts after the loan origination, but prior to foreclosure. In paragraph 49 of his second amended complaint, Scott alleged: "Plaintiff had specific discussions with employees of JPMorgan Chase prior to the time JPMorgan Chase acquired the certain assets and liabilities of Washington Mutual from the FDIC in which the representatives and employees of JPMorgan Chase, both prior to its acquisition of Washington Mutual from the FDIC and subsequent to its acquisition of Washington Mutual, made representations that if plaintiff spent his own funds to bring the house to the point of obtaining a final building inspection, JPMorgan Chase would provide reimbursement of the balance of the

22

construction funds and permanent financing. As a result of those representations, plaintiff did expend in excess of $400,000.00 of his personal funds, including, but not limited to, borrowing from his pension plan to comply with the conditions set forth by JPMorgan Chase."

These allegations, however, are not sufficiently specific to support a claim for fraud: they do not allege with particularity who made the statements, when they were made, what was actually stated, or why they were false. (See *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645; *Tarmann v. State Farm Mut. Auto Ins. Co*. (1991) 2 Cal.App.4th 153, 157 ["The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written"].) Nor has Scott, in the trial court or in his appellate briefs, articulated any other cause of action that could be based on JPMorgan's purported statements. Scott has failed to show that his allegations allege a cognizable cause of action.

### 3. *Wrongful Foreclosure: JPMorgan's Lack of Standing to Foreclose*

Turning to Scott's wrongful foreclosure claim, Scott contends that JPMorgan lacked *standing* to foreclose on his property, because it had no beneficial interest under the deed of trust on his property. Although this assertion about standing reigns paramount in Scott's appellate briefs, the allegation does not actually appear in his purported cause of action for wrongful foreclosure; instead, it is found in paragraph 40, which is merely incorporated by reference into the cause of action and reads: "Plaintiff contends that defendant JP Morgan Chase has not completed the transfer of the Washing [*sic*] Mutual assets from the FDIC to JP Morgan Chase. Plaintiff further contends that as a result, defendant JP Morgan Chase has no rights in plaintiff's real property and that any foreclosure actions proceeded wrongfully."

Scott's lack-of-standing theory is precluded by the allegations of the second amended complaint and the facts judicially noticed by the court: the original beneficiary under the deed of trust was Magnus; Magnus transferred its beneficiary interest to

23

WaMu; and, as demonstrated by the P&A Agreement, WaMu's assets were transferred by the FDIC to JPMorgan as of September 25, 2008. Therefore, JPMorgan had WaMu's beneficial interest in the deed of trust on Scott's property, and the power to foreclose with respect to Scott's loan on the date that JPMorgan initiated the foreclosure proceedings against Scott for default.[10]

Scott argues that JPMorgan did not establish the chain of assignment or ownership of the beneficial interest in the deed of trust from Magnus to WaMu. As explained *ante*, however, Scott himself alleges that WaMu notified him that it "retained custody" of his loan after Magnus became insolvent, the assignment judicially noticed by the court reflects the transfer of the beneficial interest to WaMu, and the second amended complaint contains no well-pleaded facts from which the invalidity of the assignment may be inferred. Based on the allegations of Scott's pleading and the facts judicially noticed, the only reasonable inference is that WaMu held the beneficial interest under the deed of trust on Scott's property as of the time WaMu's assets were transferred to JPMorgan.

Scott further argues (but did not allege in his second amended complaint) that JPMorgan failed to establish that the assets transferred to it from WaMu included the beneficial interest in the deed of trust. However, the P&A Agreement states that JPMorgan is receiving "*all* right, title, and interest of the Receiver in and to *all of the assets* (real, personal and mixed, wherever located and however acquired) . . . of the Failed Bank [WaMu] whether or not reflected on the books of the Failed Bank as of Bank Closing [September 25, 2008]." (Italics added.) Indeed, Scott admits in his second amended complaint that JPMorgan acquired "certain assets" of WaMu from the FDIC and, before and after that time, discussed the loan with Scott. Based on the allegations of Scott's pleading and the facts arising from the legal effect of the P&A Agreement, the only inference is that JPMorgan received the beneficial interest under the deed of trust on Scott's property, and thus had standing to foreclose.

---

[10]    There is no dispute that the FDIC had legal authority to transfer WaMu's assets to JPMorgan. (See generally 12 U.S.C. § 1821(d)(2).)

### 4. *Wrongful Foreclosure:  Procedural Irregularities*

In his wrongful foreclosure claim, Scott alleged that the "Notice of Default was defective," the amount stated as due and owing in the Notice of Default was incorrect, and interest was overcharged.  In this appeal, however, Scott insists that his wrongful foreclosure claim is *not* based on procedural irregularities, but exclusively on JPMorgan's purported lack of standing to foreclose.  Scott fails to establish a cause of action based on his conclusory allegations of the deficiencies in the notice of default or other aspects in the foreclosure process.

### 5. *Wrongful Foreclosure:  Loan Unenforceable*

In his wrongful foreclosure claim, Scott alleges in paragraph 104 that "[d]efendants had no right to foreclose at the time foreclosure proceedings were commenced," because fraud was perpetrated "in the loan origination process," such that there was no valid loan on the property and "therefore no possibility of default."  In essence, Scott alleges, it was wrong for JPMorgan to sell his property (to which he had obtained title before taking on the loan) for nonpayment on a loan that should be voided ab initio, and if he can prove his claim of fraud in the inducement he should be able to void the loan and receive clear title to his property.

This claim is also precluded by JPMorgan's nonassumption of liability in section 2.5 of the P&A Agreement.  The P&A Agreement expressly extends to borrower's claims for "legal *or* equitable" relief, whether asserted "affirmatively *or* defensively."  And agreements like the P&A Agreement, which further important public policy (see *Payne, supra,* 924 F.2d at p. 111), do not leave the borrower without recourse, since the borrower may seek relief from the FDIC (*Yeomalakis, supra,* 562 F.3d at p. 60).

Moreover, even if this claim were not precluded by the P&A Agreement, it would be precluded because the allegations of the second amended complaint are insufficient to state a claim for fraud in the inducement.  Fraud must be pleaded with specificity.  (See *Lazar, supra,* 12 Cal.4th at p. 645.)  Scott has pleaded in generalities, without identifying the specific persons who made the misrepresentations, the precise statements made, or the dates on which they were made.

In sum, as a matter of law based on Scott's allegations (which we assume to be true if well-pleaded, unless indisputably rebutted by facts judicially noticed) and facts that were the proper subject of judicial notice, none of Scott's theories of liability are tenable. Scott has therefore failed to show any cognizable basis for the causes of action he asserted in his second amended complaint, or any other cause of action. The court did not err in sustaining JPMorgan's demurrer to Scott's second amended complaint.

C. *Other Arguments of the Parties*

1. *Scott's Failure to Tender*

When asserting a cause of action to quiet title or wrongful foreclosure, a plaintiff must usually allege tender of the amount of the secured debt. (See, e.g., *Miller v. Provost* (1994) 26 Cal.App.4th 1703, 1707 ["a mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee"]; *Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 117 [judgment on the pleadings properly granted where plaintiff attempted to set aside trustee's sale for lack of adequate notice, because "[a] valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust"]; *United States Cold Storage v. Great Western Savings & Loan Assn.* (1985) 165 Cal.App.3d 1214, 1222-1223 ["the law is long-established that a *trustor* or his successor must tender the obligation in full as a prerequisite to challenge of the foreclosure sale"]; *FPCI RE-HAB 01 v. E&G Investments, Ltd.* (1989) 207 Cal.App.3d 1018, 1021 [tender rule is based on the equitable maxim that a court of equity will not order a useless act performed; "if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs"].)

Scott argues that there is no tender requirement where the borrower challenges the foreclosure sale as void ab initio. (Citing *Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 874-876 [foreclosure void and deed void on its face, where trustee who gave notice and sold the property had been divested of all authority, as a matter of law, to take those actions, in light of a recorded substitution of trustees]; *Lona* v. C*itibank, N.A.* (2011) 202 Cal.App.4th 89, 112-113 [tender requirement inapplicable where deed is void

26

on its face, the borrower's action attacks the validity of the underlying debt, the person who seeks to set aside the trustee's sale has a counterclaim or setoff against the beneficiary, or it would otherwise be inequitable to impose such a condition].)

Scott's bases for claiming that the foreclosure sale is void, however, are his assertions that the loan was procured by fraud in the first place, and that JPMorgan had no standing to foreclose because it received no beneficial interest in the deed of trust. As we have explained *ante*, while Scott claims the loan was procured by fraud, he has not alleged fraudulent inducement with sufficient specificity. Furthermore, even if JPMorgan's purported lack of standing could render the sale void (as opposed to voidable) – a matter we do not decide – we have already determined that JPMorgan *did* have standing to foreclose as a matter of law, based on the allegations and the facts judicially noticed by the trial court.

Lastly, Scott argues that he should not be required to tender because banks are not trustworthy. We are not persuaded that the tender rule should be jettisoned simply because a borrower says he distrusts the bank that foreclosed on his property. Scott's failure to allege tender establishes an alternative ground for sustaining the demurrer to his wrongful foreclosure and quiet title claims, as well as to all claims seeking relief from foreclosure or "implicitly integrated" with foreclosure. (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109; *Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 577-580 [demurrer properly sustained without leave to amend as to junior lienor, who sought to set aside a nonjudicial foreclosure sale *and* obtain damages for a defect in the notice based on a wrongful foreclosure claim, as well as damages for fraud and negligence, where the junior lienor had not alleged that it tendered the full amount to the senior lienor].)

### 2. *Effect of Verification of Pleading*

Scott argues that because he verified his second amended complaint, the court must give greater weight to the facts he alleges than the facts judicially noticed based on the P&A Agreement. He provides no authority for this novel proposition, or for his related argument that the court must accept his contentions, deductions, and legal

27

conclusions. Nor is the argument persuasive: averring that a conclusion of law is true of one's own personal knowledge does not make a conclusion of law more lawful or less conclusory.

Scott fails to establish that the court erred in sustaining JPMorgan's demurrer to the second amended complaint in its entirety.

D. *Denial of Leave to Amend*

We review a denial of leave to amend for an abuse of discretion. (*Debro, supra*, 92 Cal.App.4th at p. 946.) To prevail on appeal, an appellant must usually demonstrate a reasonable possibility that the defects in the complaint can be cured by amendment. (E.g., *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081; see *Vaca v. Wachovia Mortgage Corp*. (2011) 198 Cal.App.4th 737, 743.) Thus, Scott must show how the second amended complaint could further be amended and how, as so amended, the pleading would state a cause of action. (*Buller, supra,* 160 Cal.App.4th at p. 992.)

Scott fails to show how he could further amend his complaint to state a cause of action. He has had prior opportunities in the trial court to allege facts sufficient to state a cause of action, and he fails to explain what specific factual amendment he would make or why it would cure the deficiencies of his pleading.

In the trial court, Scott sought leave to amend based on the following: "Plaintiff submits to the court that the discovery responses adduced in this case clearly demonstrate the active involvement of JPMorgan Chase's representatives with this transaction after the acquisition by JPMorgan Chase of Washington Mutual." This proffer is patently insufficient, in that it fails to set forth any specific facts that Scott could allege to cure the deficiencies of his pleading and state a cause of action.

In light of Scott's vague and nonspecific proffer, as well as the allegations of the second amended complaint, Scott's prior opportunity to amend, and the arguments in his appellate brief, Scott has not demonstrated any reasonable possibility that the defects of his

pleading can be cured by amendment. The court did not abuse its discretion in denying him further leave to amend.[11]

## III. DISPOSITION

The order sustaining JPMorgan's demurrer to Scott's second amended complaint without leave to amend, which we deem to constitute the judgment of dismissal in the trial court, is affirmed.

NEEDHAM, J.

We concur:

SIMONS, Acting P. J.

BRUINIERS, J.

---

[11] At oral argument in this appeal, Scott requested leave to amend in order to add claims for breach of contract and negligence based on JPMorgan's conduct after it became the beneficiary under his deed of trust. He also urged that the allegations of his pleading were like those in *Jolley* – including an alleged breach of contract and wrongful foreclosure for failing to provide Scott additional funds under his loan. Even on this basis, however, he fails to demonstrate that he can state a cognizable cause of action or that the trial court abused its discretion.

<u>Scott v. JPMorgan Chase et al., A132741</u>

Trial court:                        Solano County Superior Court

Trial judge:                        Hon. Scott L. Kayes

Michael D. Scott, in pro. per.; Terry J. Thomas and Nelson Goodell for Plaintiff and Appellant.

AlvaradoSmith, Theodore E. Bacon and T. Matthew Hansen for Defendants and Respondents.