Filed 12/2/21  Barrera v. Wells Fargo Bank CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GUILLERMINA GARCIA BARRERA et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> WELLS FARGO BANK, N.A., <br><br> Defendant and Respondent. | G060412 <br><br> (Super. Ct. No. 17CV317925) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Santa Clara County, Mary Arand, Judge.  Affirmed.

Mellen Law Firm and Matthew Mellen for Plaintiffs and Appellants.

Severson & Werson, Elizabeth C. Farrell and Jan T. Chilton for Defendant and Respondent Wells Fargo Bank, N.A.

In 2017, Wells Fargo Bank, N.A. (Wells Fargo) initiated foreclosure proceedings against Guillermina Garcia Barrera and her husband Rogelio Barrera (collectively referred to as the Barreras) for defaulting on their home loan. They filed suit against Wells Fargo, contesting not the default, but the amount of their past due loan balance. The trial court granted first a demurrer and then summary judgment in favor of Wells Fargo. The Barreras assert this was done in error, but we disagree and affirm the judgment.

FACTS

The operative complaint alleges the Barreras own a home in San Jose, which they purchased in 2006 with financing from World Savings Bank in the amount of $612,500. At some point thereafter, Wells Fargo acquired their home loan. They eventually fell behind on their home loan payments due to an unexpected financial hardship and filed for bankruptcy in 2011.

Under their bankruptcy plan, the Barreras were to repay the arrearages owing on their home loan through the bankruptcy trustee while also directly paying Wells Fargo for further monthly payments as they became due. They voluntarily dismissed their bankruptcy case in February 2016. By that time, the trustee had not yet fully repaid the prepetition arrearages. The Barreras had made only five of the more than 50 monthly payments due for postpetition monthly installments.

In April 2016, the trustee under the Barreras' deed of trust, Clear Recon Corporation (Clear Recon), recorded a notice of default that stated the amount past due as of April 19, 2016, was $167,914.08. It also confirmed the loan was in default for failure to pay the monthly installment due on August 1, 2011, and all subsequent monthly payments. A declaration of compliance was recorded with the notice of default. It stated the mortgage servicer exercised due diligence in attempting to contact the Barreras as required by Civil Code section 2923.55 (all further statutory references are to the Civil Code).

2

In May 2016, the Barreras filed a second bankruptcy petition. It was dismissed in August 2017. At the end of August 2017, Clear Recon recorded a notice of trustee's sale, stating the unpaid balance then due on the Barreras' loan was $771,419.05.

The Barreras' operative complaint against Wells Fargo alleged: violation of section 2924.17 (claim 1), violation of section 2924, subdivision (a)(1)(C) (claim 2), and declaratory relief (claim 3). Claim 1 sought an injunction against foreclosure pursuant to section 2924.12 for an alleged violation of section 2924.17. It asserted Wells Fargo "failed to review competent and reliable evidence to substantiate the supposed default before causing Clear Recon . . . to record a Notice of Default and Notice of Trustee's Sale for [the Barreras'] Property."

In claim 2, the Barreras alleged the "notice [of default] they received was materially deficient and failed to comply with the requirements of [section] 2924[, subdivision] (a)(l)(C). In particular, the notice received was inaccurate, asked for monies not actually owed, and failed to provide a statement setting forth the nature of each breach actually known to the beneficiary. This violation [was] material because [the Barreras] believe that the stated nature of breach and amount of breach of $167,914.08 are both woefully inaccurate."

Claim 3 alleged, "a judicial declaration is necessary given the conflicting statements regarding [the Barreras'] principal balance." It also asserted the $771,419.05 balance shown in the notice of trustee's sale did "not include the payments . . . made on their loan since filing bankruptcy in July 2011" or take into account the escrow payments for insurance though the Barreras had been "maintaining their own insurance since 2015."

Wells Fargo demurred to the operative complaint. The trial court sustained the demurrer as to claim 2 without leave to amend. It overruled the demurrer as to claim 1 and since the third cause of action for declaratory relief was dependent on it, also overruled the demurrer as to claim 3.

3

Wells Fargo filed a motion for summary judgment on the remaining claims. The motion was supported by a declaration by Wells Fargo employee Jacqueline Hunter. The Barreras opposed the motion, filing identical declarations.

The trial court granted Wells Fargo's motion. It determined, "[the Barreras] do not establish a triable issue of material fact to show [Wells Fargo] failed to meet its statutory obligations under . . . section 2924.17. [The Barreras] do not attempt to contradict the declaration attesting to diligent efforts to contact them, instead they focus on the competence of the evidence on which [Wells Fargo] relied prior to filing the Notice of Default. [¶] [The Barreras'] argument rests on [their] contention that they were overcharged for the mortgage, and as a result the amount stated in the Notice of Default are inaccurate and do not reflect the amount due, thus there is a triable issue of material fact. [¶] . . . [The Barreras'] evidence does not raise a triable issue of material fact as to whether [Wells Fargo] reviewed 'competent and reliable evidence' prior to filing the Notice of Default, nor does it sufficiently contradict [Wells Fargo's] declaration as to the same." The court also stated Wells Fargo met its burden on claim 3 because there was no underlying cause of action or controversy.

DISCUSSION

The Barreras challenge the trial court's rulings sustaining Wells Fargo's demurrer as to claim 2 without leave to amend. They also assert the court erred by granting summary judgment in Wells Fargo's favor on the remaining claims. Neither contention has merit.

I. *Demurrer*

Claim 2 alleged Wells Fargo violated section 2924, subdivision (a)(1)(C), by recording a notice of default that stated an inaccurate amount in default. The trial court correctly sustained Wells Fargo's demurrer to this claim without leave to amend because of the following: it failed to allege damages proximately caused by the alleged inaccuracy; emotional distress damages were not recoverable; section 2924, subdivision

4

(a)(1)(C) lacks a requirement that the notice of default state a delinquent amount with absolute accuracy; and no injunctive relief could be granted. We review a judgment of dismissal following the sustaining of a demurrer without leave to amend de novo. (*Burns v. Neiman Marcus Group, Inc.* (2009) 173 Cal.App.4th 479, 486.) We "independently evaluate the complaint, construing it liberally, giving it a reasonable interpretation, reading it as a whole, and viewing its parts in context. [Citation.]" (*Ibid.*)

In conducting this analysis, we assume "the truth of all facts properly pleaded in the complaint or reasonably inferred from the pleading, but not mere contentions, deductions, or conclusions of law. [Citations.]" (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 751.) We also consider facts of which the trial court properly took judicial notice. (*Ibid.*)

Claim 2 did not allege any recoverable damages proximately caused by the alleged inaccuracy in the amount of the Barreras' delinquency. The Barreras do not dispute the fact they were in default. It was their default—not the purported inaccurate amount of that delinquency—which caused the alleged "damage to [the Barrera's] credit resulting from the foreclosure status of their loan," as well as the allegedly added "legal fees and foreclosure fees." Similarly, damages from the asserted "mishandling of [the Barreras'] hazard insurance" were caused by the supposed "mishandling," not the delinquency amount stated in the notice of default.

The Barreras also sought emotional distress damages. Those damages, however, are not recoverable in an action not alleging intentional, outrageous conduct, a duty to plaintiff in which plaintiff's emotional condition is an object, or actual or threatened physical harm. (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 205-208.)

As the Barreras concede, section 2924, subdivision (a)(1)(C), lacks a requirement the notice of default state a delinquent amount with absolute accuracy. What the statute does require is the notice of default contain "[a] statement setting forth the

5

nature of each breach actually known to the beneficiary" as well as the beneficiary's election to foreclose. (§ 2924, subd. (a)(1)(C).)

Here, the notice of default satisfied section 2924, subdivision (a)(1)(C)'s requirements. It described the nature of the breach as "a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of: [¶] . . . Installment of Principal and Interest plus impounds and/or advances which became due on 8/1/2011 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable."

Finally, no injunctive relief could be granted on claim 2. "[T]he availability of injunctive relief under the [Homeowner's Bill of Rights] is governed exclusively by its two provisions—sections 2924.12, subdivision (a)(1) and 2924.19, subdivision (a)(1) . . .—in which the Legislature authorized the courts to interpose such relief into the nonjudicial foreclosure scheme. Neither provision authorizes a court to enjoin a violation of section 2924[, subdivision](a). . . ." (*Lucioni v. Bank of America, N.A.* (2016) 3 Cal.App.5th 150, 155 (*Lucioni*).) Thus, no injunctive relief is available for a violation of section 2924, subdivision (a)(1)(C).

II. *Summary Judgment*

The trial court determined summary judgment was proper as to claim 1, holding there were no triable issues of material fact because Wells Fargo met its statutory obligations pursuant to section 2924.17. Accordingly, claim 3, the related declaratory relief cause of action, also failed. The court did not err.

A grant of summary judgment is reviewed de novo, "considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citations.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) "[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of

6

material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted.) The moving party also "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he [or she] carries his [or her] burden of production, he [or she] causes a shift, and the opposing party is then subjected to a burden of production of his [or her] own to make a prima facie showing of the existence of a triable issue of material fact." (*Ibid.*)

Claim 1 alleged, "Pursuant to [section] 2924.17[, subdivision] (b), before recording a Notice of Default or Notice of Trustee's Sale, a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information." It further stated, "Wells Fargo failed to review competent and reliable evidence to substantiate the supposed default before causing Clear Recon . . . to record a Notice of Default and Notice of Trustee's Sale for [the Barreras'] Property."

The Barreras allege Wells Fargo violated section 2924.17, subdivision (b), by recording a notice of default that was inaccurate without having reviewed competent and reliable evidence to substantiate their default. Specifically, they contend Wells Fargo overcharged for the mortgage, and as a result the amount stated in the notice of default is inaccurate and does not reflect the amount due, thus there is a triable issue of material fact. They do not dispute they are in default or otherwise challenge Wells Fargo's review procedure.

A servicer must review loan status to ensure foreclosure proceedings do not commence against borrowers who are not in default. (§ 2924.17, subd. (b).) Section 2924.17 only creates a burden for the foreclosing party to prove it filed a declaration required by section 2923.55 and that the necessary steps were taken before filing the declaration. "Sections 2924.17 and 2923.55, then, place a burden on the foreclosing party to file a declaration with the notice of default, and provide requirements for the

7

lender's diligence prior to filing that declaration. Those provisions do not create a burden on the foreclosing party to prove anything in court, other than that the declaration required by section 2923.55, subdivision (c) was filed, and that necessary steps were taken before filing it." (*Lucioni*, *supra*, 3 Cal.App.5th at p. 163.) "The filing of the declaration and review of the assignments do not immunize [Wells Fargo] from a postforeclosure lawsuit, but, under the present statutory scheme, they preclude injunctive relief for a violation of the requirements of sections 2924.17 and 2923.55. Sections 2924.17 and 2923.55 do not create a right to litigate, preforeclosure, whether the foreclosing party's conclusion that it had the right to foreclose was *correct*." (*Ibid*.)

In support of its motion, Wells Fargo filed a declaration by its employee, Jacqueline Hunter, vice president of loan documentation. As required by section 2924.17, subdivision (b), Hunter attested to her knowledge of and familiarity with Wells Fargo's record systems regarding its home loan servicing functions and the fact that those systems are "maintained to assure reliability and accuracy in the storage and retrieval of information." She further declared: "On April 20, 2016, Wells Fargo caused a Notice of Default to be recorded against the Property. Prior to recording the Notice of Default, Wells Fargo reviewed competent and reliable information regarding [the Barreras'] account, including the payment history for this loan, and determined that the default listed in the Notice of Default was consistent with the amount in default at the time it was recorded."

The Barreras do not dispute this evidence but point to their own declarations to demonstrate a triable issue of material fact. Their declarations, however, do not dispute Wells Fargo's due diligence. In their declarations, the Barreras assert that the alleged $167,000 default is an incorrect amount and does not reflect payments made toward the loan since July 2011. They further declare Wells Fargo "overcharged [the Barreras] by about $56,000.00." The Barreras' declarations and attached evidence do not demonstrate this discrepancy. Furthermore, they fail to explain how any miscalculation

8

constitutes a material violation of the statute. Instead, they merely allege Wells Fargo miscalculated the amount of their delinquency.

It is unclear which figure the Barreras contend is correct, but they dispute the $167,914.08 stated in the notice of default, and assert they were overcharged by about $56,000. In any event, this alleged discrepancy, which was not adequately supported by evidence, would matter only if the Barreras sought to exercise their right to reinstate their loan, seek to repay the entire loan balance preforeclosure, or claim that a foreclosure sale resulted in a surplus payable to them. The record is devoid of the Barreras' attempts to reinstate the loan or repay the balance preforeclosure. Because the foreclosure has not yet occurred, the Barreras cannot and do not sue for a surplus.

Wells Fargo proffered evidence it satisfied the procedural requirements of section 2924.17, subdivision (b). Wells Fargo also met the necessary steps prior to filing the declaration, attempting with due diligence to contact the borrowers. This undisputed evidence established Wells Fargo reviewed competent and reliable evidence, including the payment history for this loan, prior recording its notice of default and determined the default listed was accurate.

Wells Fargo carried its burden of persuasion of the nonexistence of a triable issue of material fact. Accordingly, the burden then shifted to the Barreras to make a showing of the existence of a triable issue of material fact. To meet this requirement, they contend Wells Fargo's figures are incorrect based upon statements of payments they believe they made and were not credited and alleged overcharges of escrow advances. The only evidence offered by the Barreras, however, is a sparse, confusing, three-page spreadsheet that fails to counter Wells Fargo's detailed accounting of the default. Furthermore, as discussed above, the mere allegation of a discrepancy in the amount of the default is insufficient, at this preforeclosure stage, to demonstrate a triable issue of material fact. The Barreras failed to carry their burden to demonstrate the existence of a triable issue of material fact as to claim 1.

9

Finally, the trial court also correctly granted Wells Fargo summary judgment on claim 3.  Claim 3 was a cause of action for declaratory relief based upon claim 1.  The court correctly stated, "because there is no underlying cause of action or controversy, [Wells Fargo] also met its burden as to the cause of action for declaratory relief.  (See *Artus v. Gramercy Towers Condominium Assn.* (2018) 19 Cal.App.5th 923, 931 (fn. omitted).)"

## DISPOSITION

The judgment is affirmed.  Wells Fargo shall recover its costs on appeal.

O'LEARY, P. J.

WE CONCUR:

BEDSWORTH, J.

ZELON, J.*

*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.