[No. S062661. May 27, 1999.]

STORMEDIA INCORPORATED et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
SARA WERCZBERGER et al., Real Parties in Interest.

Counsel

Wilson, Sonsini, Goodrich & Rosati, James A. DiBoise, Lloyd Winawer, Michael J. Levy, Shirley C. Wang and Jonathan Block for Petitioners.

Shearman & Sterling, Jeffrey S. Facter and Michele F. Kyrouz for Adobe Systems Incorporated as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Millberg Weiss Bershad Hynes & Lerach, Patrick J. Coughlin, Leonard B. Simon, William S. Dato, Randi D. Bandman, Spencer A. Burkholz, Amber L. Eck, John K. Grant; Bernstein Liebhard & Lifshitz, Sandy A. Liebhard and Mel E. Lifshitz for Real Parties in Interest.

Opinion

**BAXTER, J.**—This matter, a companion to *Diamond Multimedia Systems, Inc.* v. *Superior Court* (1999) 19 Cal.4th 1036 [80 Cal.Rptr.2d 828, 968 P.2d

539] (*Diamond Multimedia*), presents additional issues arising under section 25400 of the Corporate Securities Law of 1968 (Corp. Code, § 25000 et seq.).[1] In this action we are asked to decide if out-of-state purchasers of stock have a remedy under section 25500 for market manipulation in violation of section 25400, a question we answered in the affirmative in *Diamond Multimedia,* where we also rejected an argument—also made here—that permitting recovery under sections 25400 and 25500 on the basis of false or misleading forward-looking statements may be inconsistent with federal law. Petitioner StorMedia Incorporated (StorMedia) also argues here that the complaint does not allege that StorMedia was a person who sold, offered to sell, purchased or offered to purchase stock within the meaning of section 25400, subdivision (d) because it does not allege that StorMedia engaged in "market activity." Finally, we are asked to determine when civil liability for violation of section 25400 may be predicated on a theory of participation in acts of market manipulation by another person.

We need not reach the last question because we conclude that the allegations of the complaint underlying this action state facts which, if true, are sufficient to establish that StorMedia itself sold stock within the meaning of subdivision (d) of section 25400. We therefore affirm the judgment of the Court of Appeal.

I

*Factual and Procedural Background*

The petition filed in the Court of Appeal by StorMedia and six individuals, defendants below, sought a writ of mandate to compel the Santa Clara County Superior Court to set aside an order overruling StorMedia's demurrer to a complaint seeking damages for alleged violations of subdivision (d) of section 25400 (market manipulation),[2] to sustain the demurrer, and to dismiss the pending action.

A. *The complaint.*

The complaint was filed as a class action by plaintiff and real party in interest Sara Werczberger on behalf of herself and all persons who purchased StorMedia common stock between November 27, 1995, and August

---

[1] All statutory references are to the Corporations Code unless otherwise indicated.

[2] Additional causes of action in the complaint alleged violations of Civil Code sections 1709-1710 (fraud/deceit) and Business and Professions Code sections 17200 and 17500 (unfair competition). A demurrer to the fraud cause of action was sustained with leave to amend, and plaintiffs subsequently withdrew the unfair competition cause of action. We therefore address only those issues relevant to the first cause of action, alleging violation of section 25400.

9, 1996. The nationwide class includes residents of California. The residence of the named plaintiff is not stated. The location at which class members bought StorMedia shares is not stated, although the named plaintiff "admits" that the class includes persons who did not purchase StorMedia stock in California as well as persons who are domiciled in California and persons who purchased StorMedia stock in California.

Defendants, in addition to StorMedia, are William J. Almon, chairman, chief executive, and executive committee member; Michael E. Oxsen, president and chief operating officer; Atef Eltoukhy, senior vice-president and chief technical officer; Stephen M. Abely, chief financial officer and vice-president of finance; Sherman Silverman, vice-president of sales & marketing; and Henry Lo, treasurer and vice-president of investor relations.

The complaint alleges[3] that StorMedia has its headquarters and principal place of business in Santa Clara, California, and is a developer, manufacturer, and marketer of thin film disks for hard disk drives used in desktop and portable computers. It was formed in May 1994 when Nashua Corporation divested its money-losing film computer disk operation. Almon, Oxsen, and Abely returned the operation to profitability and the company went public in May 1995. StorMedia shares were traded through the NASDAQ National Market system during the class period. Werczberger purchased 150 shares of StorMedia stock on May 21, 1996, at 28½ per share.

During the class period StorMedia sold shares through its employee stock purchase plan and repurchased stock pursuant to the exercise of "put options" sold with 500,000 shares of stock prior to the class period. StorMedia stock was also sold to the public by insiders who acquired the stock from StorMedia through the exercise of stock options. All of the individual defendants except Almon allegedly sold StorMedia stock during the class period based on insider information, and all were aware of and approved false statements issued by or on behalf of StorMedia during the class period. Through their positions, the individual defendants allegedly controlled StorMedia press releases, corporate requests, Securities and Exchange Commission filings, and communications with analysts. They concealed information about problems in and the deterioration of StorMedia's business to make it appear that the business was succeeding and growing, and did so to artificially inflate the price of StorMedia stock.

---

[3]For the purpose of ruling on a demurrer, the court assumes the truth of all well-pleaded allegations of a complaint. (*Lazar* v. *Superior Court* (1996) 12 Cal.4th 631, 635 [49 Cal.Rptr.2d 377, 909 P.2d 981].)

The complaint alleges that each defendant made false and misleading statements,[4] willfully participated in a scheme or conspiracy, and/or aided and abetted fraud in order to deceive the public about the demand for StorMedia product and inflate the price of its stock. This permitted insiders to sell $4.8 million of their StorMedia stock at artificially inflated prices and enabled StorMedia to avoid a larger loss on shareholder exercise of the put options.

The cause of action for violation of section 25400 alleges that members of the class purchased StorMedia stock when the price was artificially inflated as a result of the false and misleading statements of defendants. Class members relied on the integrity of the market and would not have purchased the stock at the price paid or at all had they been aware of the artificial inflation of the price.

B. *The demurrer.*

StorMedia and all individual defendants demurred on the ground that the complaint failed to state a cause of action in that it did not allege that the transactions of which it complained took place "in this state." StorMedia and Almon demurred on the ground that the complaint failed to state a cause of action because it did not allege that either sold any stock during the class period. Silverman and Eltoukhy demurred on the ground that the complaint failed to state a cause of action because it did not allege that they made any of the statements challenged in the complaint. Lo demurred on the ground that it failed to state a cause of action because the one statement attributed to him was not made to induce the purchase of StorMedia stock or alleged to be false.

The superior court overruled the demurrer based "on the jurisdictional ground," apparently a reference to the failure to allege that any transaction occurred "in this state." It sustained Almon's demurrer with leave to amend. StorMedia's demurrer, on the ground that it did not offer to or sell or

---

[4]The statements were primarily statements about high demand for StorMedia products, and forecasts of greatly increased production and earnings growth anticipated in 1996 and 1997. The forecasts were based in large part on a contract with Maxtor, a major customer, whose new contract specifications defendants knew StorMedia could not meet. Defendants also announced that StorMedia earnings exceeded analysts' expectations for the first quarter of 1996, but did not reveal that the earnings were not a result of high demand for the products but reflected a reduction in reserve for returns of defective products and a lowering of its estimated tax rate. In fact, absent the nonoperating financial adjustments, StorMedia's first quarter earnings would have been below analysts' estimate as a result of weakening demand for the products.

purchase securities during the class period, was overruled. The demurrer of Eltoukhy and Silverman on the ground that they did not make any statements was overruled.[5]

## C. *The petition for writ of mandate.*

■■ StorMedia and the six individual defendants filed the instant petition for writ of mandate in the Court of Appeal for the Sixth District. The petition sought to set aside the superior court order to the extent that it overruled their demurrers on the grounds that: (1) the section 25500 remedy for violation of section 25400 is available only to persons who purchased or sold stock in California; (2) a person who purchased previously issued common stock on the open market may not recover damages for violation of subdivision (d) of section 25400 from a corporation that did not conduct a stock offering or otherwise sell its stock to the general public during the period in which the price of its stock was affected by its market manipulation activities; and (3) to the extent that sections 25400 and 25500 impose liability based on conduct that is immunized by the "Safe Harbor" provision of the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-5(c)), California law is preempted.[6]

The Court of Appeal, after soliciting opposition, summarily denied the petition. (See Code Civ. Proc., § 1085.) This court granted defendants' petition for review and issued an order to show cause why the relief sought should not be granted. ■■ ■■ Plaintiffs, the real parties in interest, have filed a consolidated demurrer to the petition and return to the order to show cause.[7]

---

[5]The grounds on which Lo demurred were not mentioned in the minute order. The assertion that his purpose was not to induce the purchase of stock is a factual matter that may constitute a defense. It is not a matter apparent on the face of the complaint, however, and thus does not constitute a proper ground of demurrer. (*Assurance Co. of America* v. *Haven* (1995) 32 Cal.App.4th 78, 82 [38 Cal.Rptr.2d 25]; *Far West Citrus, Inc.* v. *Bank of America* (1979) 91 Cal.App.3d 913, 917 [154 Cal.Rptr. 464].)

[6]For the reasons stated in *Diamond Multimedia, supra,* 19 Cal.4th at pages 1056-1058, we also reject these petitioners' claim that imposing liability on StorMedia or the individual defendants for forward-looking statements would be inconsistent with the Safe Harbor provision of the Private Securities Reform Act of 1995. (15 U.S.C. § 78u-5.)

[7]The demurrer, authorized by Code of Civil Procedure section 1089, asserts that the petition for writ of mandate fails to state a claim on which relief may be granted. "[A] showing on general demurrer that the petition does not state sufficient facts to justify relief is a complete answer to an order to show cause, and the court is then warranted in discharging the order and dismissing the proceeding." (*Green* v. *Gordon* (1952) 39 Cal.2d 230, 232 [246 P.2d 38].) Where, as here, the demurrer is based on that ground and only issues of law are presented by the petition, there is no need to consider the return and demurrer separately.

## II

### *Discussion*

#### A. *Purchase "in this state."*

 Petitioners, defendants below, contend, as did the petitioners in *Diamond Multimedia, supra,* 19 Cal.4th at page 1043, that the words "in this state" in the introductory sentence of section 25400 should be read into subdivision (d) of that section. Under petitioners' reading of that subdivision there is no violation unless the defendant intends to induce the purchase or sale of stock by others in California, and only persons in the protected group, i.e., persons who purchase or sell stock in California, may sue under the authority of section 25500.

The argument that "in this state" as used in section 25400 reflects legislative intent to proscribe only conduct intended to manipulate the California market for a stock and, therefore, the remedy created by section 25500 is available only to persons who purchase or sell an affected stock in California has been considered and rejected in *Diamond Multimedia*. These petitioners make no arguments that have not been considered there. We turn therefore to petitioners' second argument.

#### B. *StorMedia as seller or purchaser of stock within the meaning of section 25400, subdivision (d).*

 StorMedia demurred to the complaint on the ground that the complaint did not allege that the corporation sold any shares during the class period (November 27, 1995 through August 9, 1996). Subdivision (d) of section 25400 applies to a "broker-dealer or other person selling or offering for sale or purchasing, or offering to purchase" the stock affected by the defendant's unlawful market manipulation activity.[8]

 ██ The complaint alleges that StorMedia had an employee stock purchase plan in 1995, pursuant to which employees were given the right to purchase StorMedia common stock at 85 percent of its fair market value through a subscription agreement.[9] Under the plan on the enrollment date of each offering period, eligible employees were granted an option to

---

[8]"Person" includes a corporation, within the meaning of the Corporate Securities Law of 1968. (§ 25013.)

[9]Petitioners request judicial notice of five documents pursuant to Evidence Code sections 452, subdivision (h), and 459: (1) StorMedia Form S-3 Registration Statement filed with the Securities and Exchange Commission on May 22, 1996; (2) a May 22, 1996, StorMedia press release announcing a proposed secondary offering; (3) a copy of its 1995 employee stock

purchase shares on the exercise date of the offering period. The offering period was approximately 12 months, which began on the effective date of the initial public offering of common stock that was registered with the Securities and Exchange Commission, and continued for 26 payroll periods thereafter. Shares of stock issued pursuant to an employee benefit plan are securities within the meaning of subdivision (d) of section 25400. (§ 25019.) Contrary to petitioners' claim that the complaint does not allege that stock was sold to employees during the class period, it does allege that "as a result of this [employee stock purchase plan], StorMedia was selling its stock during the Class Period."[10] StorMedia received $1.6 million from the sale of stock to employees during the class period. Finally, the complaint alleges that StorMedia sold securities through the exercise of options granted under two other stock option plans during the class period.

StorMedia argues nonetheless that it should not be deemed to have sold, offered to sell, purchased, or offered to purchase shares during the class period because the complaint does not allege that any of the transactions alleged in the complaint took place on the open market, and does not allege that the false and misleading statements were made to induce its employees to purchase StorMedia stock through the employee stock purchase plan. Neither argument is persuasive.

1. *Open market.*

The statutory definitions of "offers to sell" and "sale," which govern under subdivision (d) of section 25400, include no reference to the forum in

---

purchase plan; (4) an article entitled How to Participate in the StorMedia, Inc. 1995 Employee Stock Purchase Plan; and (5) a StorMedia proxy statement filed with the Securities and Exchange Commission on March 25, 1997. The trial court took judicial notice of some, but not all, of these documents. Since both sides refer to the documents in their briefs and plaintiff implicitly requests judicial notice of one of the documents and does not oppose the request, the request is granted.

In ruling on a demurrer, a court may consider facts of which it has taken judicial notice. (Code Civ. Proc., § 430.30, subd. (a).) This includes the existence of a document. When judicial notice is taken of a document, however, the truthfulness and proper interpretation of the document are disputable. (*Joslin* v. *H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374 [228 Cal.Rptr. 878].) A reviewing court may consider facts judicially noticed by the trial court or those which the trial court properly could have noticed. (Evid. Code, § 459.)

When a matter to be judicially noticed is a ground for a demurrer, that matter must be specified in the demurrer or supporting points and authorities unless the court otherwise permits. (Code Civ. Proc., § 430.70.) We deem it appropriate to do so here as real parties in interest also refer to some of the documents in their briefs.

[10]The record and the employee stock purchase plan, of which we have taken judicial notice, confirm that an "exercise date" on which stock was sold to participants in the plan did fall within the class period. Under the plan an exercise date occurred at approximate one-year intervals following the initial public offering of StorMedia stock, which occurred on May 5, 1995. An exercise date therefore fell in May 1996.

which the sale takes place. Moreover, section 25400, subdivision (d) itself contains no express or implied limitation of its scope to open market traders.

"Sale" is defined in section 25017, subdivision (a): "'Sale' or 'sell' includes every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value. 'Sale' or 'sell' includes any exchange of securities and any change in the rights, preferences, privileges, or restrictions of or on outstanding securities."

Under subdivision (b) of section 25017, "'Offer' or 'offer to sell' includes every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value."

Neither of these definitions, which are applicable to all forms of securities, makes reference to sale in an open market or the equivalent.

StorMedia nonetheless argues that the sale of stock to employees and insiders did not make it a person who sold or purchased stock within the meaning of section 25400 because these transactions were not in an open market. We disagree.

Not only would StorMedia's proposed construction of section 25400 add a restriction not imposed by the Legislature, but this limitation of subdivision (d) of section 25400 to parties trading securities on an open market fails to acknowledge that the proscriptions of section 25400 apply to all forms of securities defined in section 25019 of the Corporate Securities Law of 1968, not simply stocks.[11] Many of those securities are not traded on a stock exchange or in the open market, which StorMedia argues is a prerequisite to

---

[11]Section 25019: "'Security' means any note; stock; treasury stock; membership in an incorporated or unincorporated association; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral trust certificate; preorganization certificate or subscription; transferable share; investment contract; voting trust certificate; certificate of deposit for a security; interest in a limited liability company and any class or series of such interests (including any fractional or other interest in such interest), except a membership interest in a limited liability company in which the person claiming this exception can prove that all of the members are actively engaged in the management of the limited liability company; provided that evidence that members vote or have the right to vote, or the right to information concerning the business and affairs of the limited liability company, or the right to participate in management, shall not establish, without more, that all members are actively engaged in the management of the limited liability company; certificate of interest or participation in an oil, gas or mining title or lease or in payments out of production under such a title or lease; put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof); or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency; any beneficial interest or other security issued in connection with a funded employees' pension, profit sharing, stock bonus, or similar

liability. Section 25400 thus cannot be read as applicable only to persons or entities which sell those other types of securities in the open market. The statute makes no distinction between shares of a nationally traded stock and other securities.

StorMedia relies for its argument that subdivision (d) of section 25400 imposes civil liability for market manipulation only on violators who sell stock to the general public in open market purchases on a statement by Professor Harold Marsh, Jr., and former Corporations Commissioner Robert H. Volk, who were members of the committee which drafted the Corporate Securities Law of 1968. In their treatise these drafters state with regard to subdivision (d) of section 25400 that "it is required that the defendant must have engaged in market activity in order to be liable." (1 Marsh & Volk, Practice Under the Cal. Securities Laws (1998) § 14.05[4], p. 14-52 (Marsh and Volk).)

■ Consideration of extrinsic aids to statutory construction is proper only if a statute is ambiguous. As we recognized in *Diamond Multimedia, supra,* 19 Cal.4th at page 1046, if a statute is clear and unambiguous there is no need for judicial construction and the court may not engage in it. ■ Subdivision (d) of section 25400 makes the proscribed conduct unlawful only if committed by a person "selling or offering for sale or purchasing or offering to purchase" a security. It does not provide expressly or by implication that there must be an offer for, or a sale or purchase of a security on, the open market. If this construction of the statutory language were adopted, a seller would not be liable for market manipulation that affected the price of the stock, no matter how many persons were affected, if he or she took advantage of the resulting artificial market through a private sale. The statutory language does not suggest that this was the legislative intent.

Moreover, when the Marsh and Volk statement is considered in context, it is not clear that the drafters of the Corporate Securities Law of 1968

benefit plan; or, in general, any interest or instrument commonly known as a 'security'; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. All of the foregoing are securities whether or not evidenced by a written document. 'Security' does not include: (1) any beneficial interest in any voluntary inter vivos trust which is not created for the purpose of carrying on any business or solely for the purpose of voting, or (2) any beneficial interest in any testamentary trust, or (3) any insurance or endowment policy or annuity contract under which an insurance company admitted in this state promises to pay a sum of money (whether or not based upon the investment performance of a segregated fund) either in a lump sum or periodically for life or some other specified period, or (4) any franchise subject to registration under the Franchise Investment Law, or exempted from such registration by Section 31100 or 31101 of that law."

intended to make a sale or purchase in the open market a prerequisite to liability for violation of subdivision (d) of section 25400. Marsh and Volk explain that the provisions of subdivisions (c) and (d) of section 25400, which impose liability on persons "selling or offering for sale or purchasing or offering to purchase" securities, and subdivision (e), which imposes liability on runners of tipster sheets who receive compensation from a person "selling or offering for sale or purchasing or offering to purchase" the security "repudiate" decisions under Securities and Exchange Commission rule 10b-5 (17 C.F.R. § 240.10b-5 (1998)), under which a corporation might be liable to all persons dealing in the market if it filed a false report with the Securities and Exchange Commission even though the corporation had not engaged in any market activity itself. (Marsh & Volk, *supra*, § 14.05[4], p. 14-52.) Thus, the authors' reference to "market activity" may mean only that the corporation must offer to, or sell, or purchase shares, not that those activities must occur in an open market.

Since liability for violation of subdivision (d) of section 25400 is not limited to sellers and buyers of corporate stock, or to corporations or broker-dealers, but extends to individuals and to the purchase and sale of securities for which there is no open market, petitioners' proposed construction of the subdivision is contrary to the wording of the subdivision. Even as limited to the purchase and sale of stock, that construction would exempt violators from liability for face-to-face transactions. Nothing in the language of subdivision (d), or for that matter subdivisions (c) and (e), suggests that this was the legislative intent.[12]

Recognizing that StorMedia is a seller of its stock within the meaning of subdivision (d) of section 25400 on the basis of its employee stock purchase plan does not, contrary to petitioner's argument, make section 25400 a state analogue of Securities and Exchange Commission rule 10b-5 (17 C.F.R. § 240.10b-5 (1998)). Petitioners argue that the Legislature intended to repudiate decisions under that rule which made a corporation liable for the losses of all persons dealing in the market simply for filing an allegedly false report with the Securities and Exchange Commission. (See Marsh & Volk, *supra*, § 14.05[4], p. 14-52.) Civil liability to purchasers arises under subdivision (d) of section 25400 only if the false statements were made "for the purpose of inducing the purchase or sale of such security by others." And, as Marsh

---

[12]We note that section 502 of the 1985 Uniform Securities Act, which prohibits market manipulation, includes no requirement that the person engaging in the proscribed conduct be a seller or purchaser. Civil liability remedies under section 605 of that Uniform Securities Act for violation of the act are available only to persons who purchased or sold an affected stock that is *not* "traded on a national securities exchange or quoted on a national automated quotation system administered by a self-regulatory organization." (7B West's U. Laws Ann. (1998 supp.) U. Securities Act of 1985, § 605, subd. (c).)

and Volk recognize, privity is not required under section 25400 for civil liability predicated on violation of section 25400, which is directed to market manipulation, not defrauding the particular investor. (Marsh & Volk, *supra*, § 1405[3] [a], pp. 14-50 to 14-51.)

If, as StorMedia claims, a purchase or sale by the violator in an open market were an element of a section 25400 violation, a violator would not be liable to its employees and former employees or the option holders who may be members of the class even if their decision to purchase the stock was based on the artificially enhanced open market price. Nothing in the language of subdivision (d) of section 25400 suggests that the Legislature intended to deny the section 25500 remedy to those persons while extending the remedy to persons who bought the securities on the open market.

StorMedia's stock incentive plan was an ongoing offer to sell its shares to its employees, and the corporation sold shares to its employees during the class period. These actions brought the corporation within the literal language of section 25400, subdivision (d), as did its sale of stock under its other stock option plans.[13]

### 2. *Necessity that seller intend to induce purchase or sale.*

StorMedia also argues that its sales pursuant to an employee stock purchase plan should not be considered in determining whether a corporation was a seller of stock, as the term is used in subdivision (d) of section 25400, because its allegedly false statements were not made to induce employees to purchase the stock and the plaintiff does not allege that she purchased stock through the employee stock purchase plan.

Contrary to StorMedia's view, subdivision (d) of section 25400 does not state that false and misleading statements must be made for the purpose of inducing the sale or purchase of stock that qualifies the defendant as a seller or purchaser within the meaning of that subdivision.

Subdivision (d) of section 25400 is violated if a seller makes false or misleading statements "for the purpose of inducing the purchase or sale" of

---

[13]We need not decide, therefore, whether StorMedia might also be civilly liable on a theory that it participated in the allegedly unlawful acts of the individual defendants, all of whom except Almon sold StorMedia stock during the class period. Section 25500 provides that "[a]ny person who willfully participates in any act or transaction in violation of Section 25400" is liable to purchasers and sellers of the affected stock. Plaintiff argues that StorMedia might be held liable for the section 25400 violation because it willfully participated in the stock sales of the defendants. The stock sales are not the unlawful conduct proscribed by subdivision (d) of section 25400, however. The unlawful conduct is the making of false and misleading statements for the purpose of inducing the purchase or sale of a security which the defendant is selling, offering to sell, purchasing, or offering to purchase.

the security in which the seller is dealing. As we have concluded in *Diamond Multimedia, supra,* 19 Cal.4th at page 1047, under the market manipulation provisions of subdivision (d) of section 25400, no actual sale is necessary. The subdivision may be violated by a person who simply offers the affected stock for sale. Moreover, the subdivision does not require that the intent or purpose be to induce a particular buyer to purchase the stock. Even if we were to find merit in this claim, it is not a proper ground for demurrer. (See fn. 5, *ante.*) Nothing on the face of the complaint or of which the court might take judicial notice would support petitioners' claim that there was no intent to induce the employees to purchase StorMedia stock when the allegedly false and misleading statements were made.[14]

The conduct is unlawful regardless of whether any person actually purchases the stock, and it is not necessary that the defendant intend to induce the sale or purchase which qualifies the defendant as a seller or purchaser under section 25400, subdivision (d). It is enough that the defendant is a seller or purchaser when the false and misleading statement is made and that the statement is made with an intent to induce others to buy or sell the stock. Unlike section 25401, which prohibits sales or purchases of stock "by means of" false or misleading statements, privity is not required by section 25400. (Marsh & Volk, *supra,* § 14.05[3] [a], pp. 14-50 to 14-51.) The defendant need not have sold stock to the party to whom the false or misleading statement was made. It is enough that the statement was made for the purpose of inducing any person or persons to purchase or sell the stock.

Since StorMedia sold shares to employees pursuant to the employee stock purchase plan, and sold shares pursuant to the exercise of other stock options, it did sell securities during the class period.[15] We conclude, on that basis, that the complaint does allege facts which, if true, establish that StorMedia was a "person selling or offering for sale or purchasing or offering to purchase" its stock during the class period.

---

[14]StorMedia also argues that stock purchased under the employee stock purchase plan could not be affected by false and misleading statements because the price was fixed by the contract under which the employee was bound to purchase shares at 85 percent of the market price. That argument is irrelevant to whether the complaint states a cause of action on behalf of the class. We observe, however, that contrary to the assertion of counsel for StorMedia made at oral argument, the plan permitted an employee to discontinue participation in the employee stock purchase plan at any time. Since the purchase price under the plan would fluctuate based on the market price for the shares, an employee's decision to continue in the plan might well be influenced by artificial inflation of the market price. StorMedia would, of course, benefit from false or misleading statements which artificially increased the price at which its employees purchased stock under the employee stock purchase plan.

[15]Plaintiff also argues that StorMedia sold stock when the purchasers exercised put options StorMedia sold in October 1995 which gave the purchasers the right to require the corporation to repurchase the shares between January and April 1996, and that StorMedia's May 1996 announcement of a planned secondary offering and its May 22, 1996, filing of a registration

## III

### *Disposition*

The judgment of the Court of Appeal denying the petition for writ of mandate is affirmed.

George, C. J., Mosk, J., Kennard, J., and Werdegar, J., concurred.

**BROWN, J.,** Dissenting.—For the reasons stated in my dissenting opinion in *Diamond Multimedia Systems, Inc.* v. *Superior Court* (1999) 19 Cal.4th 1036, 1065 [80 Cal.Rptr.2d 828, 968 P.2d 539], I do not believe that out-of-state purchasers of the securities of California companies have a remedy under the Corporate Securities Law of 1968 (Corp. Code, § 25000 et seq.) for market manipulation. Accordingly, I dissent.

Chin, J., concurred.

---

statement with a preliminary prospectus for that planned offer with the Securities and Exchange Commission constituted an offer to sell stock during the class period.

We have concluded on other grounds that StorMedia was a person who sold shares within the class period. Therefore, we need not address whether the put options constituted a continuing offer to purchase or whether under section 25017 redemption of the options constituted a sale only when the options were sold, and we need not consider plaintiffs' argument that the preliminary prospectus constituted an offer to sell notwithstanding a disclaimer contained therein.