Filed 2/27/23  Mateel Environmental Justice Foundation v. Fiskars Living US CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MATEEL ENVIRONMENTAL JUSTICE FOUNDATION, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> FISKARS LIVING US, LLC, et al., <br><br> Defendants and Respondents. | A164638 <br><br> (City & County of San Francisco Super. Ct. No. CGC-21-592209) |

This is an appeal by plaintiff Mateel Environmental Justice Foundation (Mateel) from a judgment of dismissal after the trial court sustained the demurrer of defendants Fiskars Living US, LLC, and Fiskars Brands, Inc. (collectively, Fiskars), in a matter brought under the Safe Drinking Water and Toxic Enforcement Act of 1986 (Health & Saf. Code § 25249.5 et seq.) (Proposition 65).[1]  By its complaint, Mateel alleged that Fiskars failed to adequately warn the users of its lead crystal drinkware of the dangers of toxic lead exposure.  Mateel sought both injunctive relief and civil penalties.

Sustaining the demurrer without leave to amend, the trial court ruled that "the proper place for any modification of Proposition 65 warnings

_____

[1] Unless otherwise stated, all statutory citations herein are to the Health and Safety Code.

1

regarding lead crystal" is the trial court that presided over a different case (*Mangini v. Action Industries, Inc.* (Super. Ct. S.F. City and County, 1993, Nos. CGC-90-932724, CGC-91-931884, CGC-91-938173 (*Mangini*)). *Mangini* was decided by a consent judgment first entered in 1993 and then reentered as modified in 2001. We agree with Mateel that, accepting as true the facts alleged in the operative complaint and only those additional facts of which the trial court could properly take judicial notice, there are no grounds upon which to sustain Fiskars's demurrer without leave to amend. Accordingly, we reverse the judgment of dismissal and return this matter for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Mateel is a California-based nonprofit organization dedicated to environmental protection and education, promotion of human health, and consumer rights. Fiskars consists of businesses that market and sell leaded crystal drinkware[2] and other products to California retailers, including The TJX Companies, Inc., which operate retail businesses under the names T.J. Maxx, Marshalls and HomeGoods.

On June 22, 2021, Mateel filed the operative first amended complaint (FAC) against Fiskars. The FAC alleged that, at least since February 18, 2018, Fiskars knowingly and intentionally exposed California residents to lead, a toxic heavy metal known to cause cancer, birth defects and other reproductive harm, by marketing leaded crystal products, including drinkware, without providing clear and reasonable warnings in compliance with Proposition 65. Mateel sought civil penalties of $2,500 per day for each individual exposed to lead since February 18, 2018, as a result of using

---

[2] Fiskars's leaded crystal drinkware includes "goblets, decanters, wine glasses, champaign flutes, and high ball glasses . . . ." (*Sic.*)

Fiskars's products without proper warning. Mateel also sought injunctive relief "to compel [Fiskars] to bring [its] business practices into compliance with section 25249.5 <u>et seq.</u> by providing to retailers to whom Fiskars sells leaded crystal, the information required to be provided to retailers in the June 2, 1993 consent judgment entered in the case, *Mangini v. Action Industries, Inc., et al.*, San Francisco Superior Court Case consolidated case numbers 952724, 931884 and 938173, and by providing to those retail customers to whom Fiskars directly sells leaded crystal, a clear and reasonable warning to each individual who has been and who in the future may be exposed to lead by drinking beverages from leaded crystal that defendants have marketed in California."

On September 30, 2021, Fiskars demurred to the FAC. In support of the demurrer, Fiskars filed a request for judicial notice of various documents, including the modified consent judgment entered on August 23, 2001, in *Mangini* (Modified Consent Judgment). Fiskars argued that the FAC failed to allege facts sufficient to state a cause of action because: (1) the issue preclusion doctrine[3] barred Mateel from relitigating what constitutes legally compliant Proposition 65 warnings for lead crystal, as this issue was conclusively decided in *Mangini*, which was brought by a plaintiff acting as a private attorney general, just as Mateel in this case; (2) the doctrine of

---

[3] Fiskars used the term "collateral estoppel" in making this argument below and continues to use this term on appeal. Courts use the terms "collateral estoppel" and "issue preclusion" interchangeably. (See, e.g., *Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 505; *Pike v. Hester* (9th Cir. 2018) 891 F.3d 1131, 1138.) In 2018, the California Supreme Court indicated it will "use 'issue preclusion' in place of 'direct or collateral estoppel.' " (*Samara v. Matar* (2018) 5 Cal.5th 322, 326.) Accordingly, we strive to do the same, while acknowledging that the parties, the court and the applicable case law sometimes refer to "collateral estoppel."

exclusive concurrent jurisdiction required this case to be stayed or dismissed because the *Mangini* court has exclusive and continuing jurisdiction over the subject matter of what constitutes legally compliant Proposition 65 warnings for lead crystal; and (3) Mateel failed to plead sufficient facts to avoid the dispositive facts that compliance with the warning regime set forth in the Modified Consent Judgment constitutes compliance with Proposition 65 and that authority to enforce this regime is exclusively reserved to the Attorney General.

On October 29, 2021, Mateel filed an opposition to the demurrer and the request for judicial notice. Mateel argued there were no facts before the court that could establish for purposes of the claim or issue preclusion doctrines that: (1) Fiskars was a party to, or in privity with a party to, the Modified Consent Judgment; or that (2) the issues raised in this action were identical to the issues actually litigated and decided in *Mangini*. Mateel also argued the exclusive concurrent proceedings doctrine was inapplicable because *Mangini* was not a "concurrent proceeding[]" because the case ended 20 years ago and involved different transactions.

On January 26, 2022, following a contested hearing, the trial court issued an order sustaining Fiskars's demurrer without leave to amend. In doing so, the court declined to reach the arguments raised by Fiskars and Mateel or to rule on Fiskars's requests for judicial notice. Instead, relying on a court's " ' " 'inherent powers' " ' " to control the litigation before it (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967), the trial court ruled that the "*Mangini* case is the proper place for any modification of Proposition 65 warnings regarding lead crystal." Judgment of dismissal was thus entered, prompting this appeal.

4

## DISCUSSION

"When any ground for objection to a complaint, cross-complaint, or answer appears on the face thereof, or from any matter of which the court is required to or may take judicial notice, the objection on that ground may be taken by a demurrer to the pleading." (Code Civ. Proc., § 430.30, subd. (a).)

Here, the trial court sustained Fiskars's demurrer to the FAC based on its inherent authority to control the litigation before it. Specifically, the trial court relied on this inherent authority in deciding Mateel's claims must be brought before the *Mangini* court, reasoning that any order it might make in this case would "inevitably" conflict with the Modified Consent Judgment reached in *Mangini*.

On appeal, Mateel contends the trial court's ruling was an abuse of its statutorily prescribed authority to rule on demurrer. Mateel also challenges the alternative arguments raised by Fiskars that its causes of action are barred by the legal doctrines of issue preclusion and exclusive concurrent jurisdiction and that allowing its lawsuit to go forward would improperly interfere with the Attorney General's exclusive authority to prosecute violations of the Modified Consent Judgment. Mateel reasons that this case involves different parties, different claims, and different transactions from those involved in *Mangini*, and even assuming for the sake of argument some overlap exists between them, *Mangini* has long ended and the *Mangini* court has long lost jurisdiction to adjudicate the Proposition 65 violations alleged here.

## I.    *Standard of Review.*

"We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense." (*Ivanoff v. Bank of*

5

*America, N.A.* (2017) 9 Cal.App.5th 719, 725.) "We assume the truth of properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters that are judicially noticeable." (*Genis v. Schainbaum* (2021) 66 Cal.App.5th 1007, 1015.)

Where, as here, "the demurrer is based on the pleading not stating ' "facts sufficient to constitute a cause of action, the rule is, that if upon a consideration of all the facts stated it appears that the plaintiff is entitled to any relief at the hands of the court against the defendants, the complaint will be held good, although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged." [Citation.] In other words, "plaintiff need only plead facts showing that he may be entitled to some relief [citation]." [Citation.] Furthermore, we are not concerned with plaintiff's possible inability or difficulty in proving the allegations of the complaint. [Citation.]' [Citation.]" (*New Livable California v. Association of Bay Area Governments* (2020) 59 Cal.App.5th 709, 714 (*New Livable California*).)

## II. *Proposition 65.*

Proposition 65, passed into law in 1986, added sections 25249.5–25249.13 to the Health and Safety Code. Under section 25249.6, those doing business in California are prohibited from intentionally exposing any individual to a chemical known to the state to cause cancer or reproductive toxicity unless a clear and reasonable warning is given. Lead is one of the chemicals that triggers a warning obligation under section 25249.6. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 299 & fn. 3.)

## III. *The Trial Court's Ruling on Demurrer.*

The trial court relied on its inherent judicial authority to control the litigation assigned to it in ruling, "The *Mangini* case is the proper place for any modification of Proposition 65 warnings regarding lead crystal." To support its ruling, the court made three findings. First, "[t]he injunctive relief provided by the [Modified Consent Judgment] is 'continuing' and 'modification' of that judgment in the future is authorized. [Citations.]" Second, acknowledging Fiskars was not a party to *Mangini*, the court read the Modified Consent Judgment to allow modification to "be sought not only by the *Mangini* plaintiff and that case's defendants, but by 'any party as provided by law for good cause shown.' [Citation.]" Lastly, the court found that, by the present lawsuit, Mateel sought new Proposition 65 warnings for lead crystal against Fiskars that "would inevitably lead to conflicts between [the Modified Consent Judgment] and any order entered in the new case."

In light of the trial court's reliance upon the Modified Consent Judgment, we begin our review with *Mangini*.

### A.   *Mangini* **and the Modified Consent Judgment.**

In 1991, plaintiff Janet C. Mangini filed a civil complaint for damages and injunctive relief in San Francisco Superior Court case No. CGC-90-932724 against defendants Baccarat, Inc.; Lalique North America, Inc., and Lalique S.A.; Galway Irish Crystal Ltd.; Martel; Waterford Crystal Ltd. and Waterford Wedgwood Retail, Inc.; Orrefors; Macy's California, Inc.; Shreve & Co.; Gump's; and Does 1–200. Mangini previously filed, and then amended, civil complaints in San Francisco Superior Court case Nos. CGC-91-931884 and CGC-91-938173 against some or all of the above named defendants as well as defendants Hoya Crystal, Inc.; Kosta Boda; and Saks & Company. Through her complaints, Mangini alleged,

7

inter alia, the defendants violated Proposition 65 by knowingly exposing individuals to lead through the manufacture, distribution and sale of "crystal products containing lead used with food or beverages (hereinafter, 'Leaded Crystal Products'), including, among others, certain decanters, glasses, and other serveware, without first providing clear and reasonable warnings to persons who could potentially be exposed to lead through the use of such products."

In 1993, after Mangini's three lawsuits were consolidated by court order, she and several named defendants settled the matter by a consent judgment. The original consent judgment was modified on August 23, 2001, to address certain later developments, including the entry of new companies into the lead crystal product business. The settling defendants (hereinafter, Settling Defendants) numbered 115 and are identified in exhibit 1 to the Modified Consent Judgment.

With this background, we return to the issues at hand.

**B.    Legal Analysis.**

"It is 'black-letter law' a demurrer tests the pleading alone. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 895, p. 334.) 'When any ground for objection to a complaint or cross-complaint does not appear on the face of the pleading, the objection may be taken by answer.' (Code Civ. Proc., § 430.30(b).) '[D]efendants cannot set forth allegations of fact in their demurrers which, if true, would defeat plaintiff's complaint.' " (*Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1144 (*Gould*).)

Here, the trial court accepted as true allegations of fact regarding the Modified Consent Judgment that were alleged by Fiskars on demurrer. The trial court then relied on those unproven facts to dismiss the FAC without leave to amend. This was error several times over.

8

As stated *ante*, Fiskars requested judicial notice of the Modified Consent Judgment in demurring to the FAC. The trial court never ruled on Fiskars's request but nonetheless made three threshold factual findings in deciding the "*Mangini* case is the proper place" to litigate Mateel's claims against Fiskars: (1) the *Mangini* court had " 'continuing' " jurisdiction to order injunctive relief and/or to modify the Modified Consent Judgment; (2) even though Fiskars was not a party to *Mangini*, Mateel could seek modification of the Modified Consent Judgment in order to pursue claims against Fiskars; and (3) awarding Mateel relief under the FAC would "inevitably lead to conflicts" with the Modified Consent Judgment. This was wrong. The Modified Consent Judgment was not before the court on demurrer and should not have been considered. (*Genis v. Schainbaum, supra*, 66 Cal.App.5th at p. 1015.)

Fiskars nonetheless adopts the trial court's erroneous approach on appeal. Countering Mateel's argument that *Mangini* has long ended, Fiskars claims "many terms [of the Modified Consent Judgment] demonstrate prospective operation," including paragraphs 4, 30 and 31, "which extend the obligations and benefits of the judgment automatically to successors and assigns . . . ." Fiskars then concludes the *Mangini* court is the proper forum for resolving Mateel's claims because "Mateel is claiming the same public interest enforcement authority as, and is in privity with, Ms. Mangini, and Mateel challenges warnings related to the same Leaded Crystal Products." The record on demurrer provides no support for these claims.

To be sure, although the Modified Consent Judgment was not attached to the FAC or judicially noticed by the court, it is referenced in the FAC. Paragraph 3 of the FAC states: "Plaintiff seeks injunctive relief pursuant to . . . Section 25249.7 to compel defendants to bring their business practices

9

into compliance with section 25249.5 <u>et seq.</u> by providing to retailers to whom Fiskars sells leaded crystal, the information required to be provided to retailers in the June 2, 1993 consent judgment entered in the case, *Mangini v. Action Industries, Inc., et al.*, San Francisco Superior Court Case consolidated case numbers 952724, 931884 and 938173, and by providing to those retail customers to whom Fiskars directly sells leaded crystal, a clear and reasonable warning to each individual who has been and who in the future may be exposed to lead by drinking beverages from leaded crystal that defendants have marketed in California." This language in the FAC makes clear that contrary to the trial court's finding, Mateel, through this lawsuit, was not seeking to modify or undermine the warning regime set forth in the Modified Consent Judgment. Rather, Mateel asked the court to impose as a remedy, in the event Fiskars was found in violation of Proposition 65, warning requirements consistent with those required under the Modified Consent Judgment.

In any event, the FAC's single reference to *Mangini* in laying out its request for injunctive relief did not open the door for the trial court to resolve on demurrer disputed matters regarding the meaning and scope of the Modified Consent Judgment. To the contrary, that resolution depends on "questions of fact which cannot be resolved at the pleading stage of the case." (*Gould, supra*, 31 Cal.App.4th at p. 1146 [improper for the court, in ruling on a demurrer, to conclude as a matter of law that "a piece of paper" is a contract between the parties]; accord, *StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, 456, fn. 9 (*StorMedia*).) We know of no authority that would allow a trial court to circumvent this legal principle by relying on its inherent authority to control the litigation before it. (See *People v. Henson* (2018) 28 Cal.App.5th 490, 513 ["A court is authorized . . . only to act within the bounds

10

of the law.  It does not have inherent authority to prohibit what the law permits, based on a misunderstanding of the law or its own view as to what the law should be"].)

We briefly identify, in a footnote *post*, some potentially relevant terms of the Modified Consent Judgment, which are discussed in the parties' briefs.[4]

---

[4] Under section II, paragraph 12, of the Modified Consent Judgment, the Settling Defendants agreed to provide "[c]lear and reasonable warning that use of Leaded Crystal Products exposes persons to lead" in one of three approved forms as provided in paragraphs 13, 15, and 17.  Any alternative warning to the three approved forms in these paragraphs was prohibited without prior written agreement from the Office of the Attorney General, which was granted exclusive authority to enforce the Modified Consent Judgment.

Paragraph 29 states that the Modified Consent Judgment is deemed "a full and final judgment and settlement applying to all Settling Defendants and all Subsidiary Settling Parties (as defined by Paragraph 31 below) for all claims, violations, actions, damages, costs, penalties or causes of action under Proposition 65 . . . and any other statutes and causes of action . . . which may have occurred up to the date on which warnings are required to be issued pursuant to Section II of this Consent Judgment, including all violations alleged in the Consolidated Complaints."  Per paragraph 31, Subsidiary Settling Parties are "the manufacturers, distributors, wholesalers, retailers, mail order and Internet sellers, restaurant suppliers, restaurants, wineries and others who may be deemed responsible for exposures of persons to lead in Leaded Crystal Products manufactured or marketed by or acquired from a Settling Defendant."  However, "[t]he releases from liability provided for by this Consent Judgment to such Subsidiary Settling Parties shall extend only to liability associated with exposures to Leaded Crystal Products manufactured or marketed by or acquired from one or more Settling Defendants and shall not extend to any liability associated with exposures to the products of any other party or entity."

Finally, in defining the scope of the release of liability, the Modified Consent Judgment distinguishes past and future claims.  As to the former, paragraph 30 states:  "Upon entry of this Consent Judgment, the Settling Defendants and Subsidiary Settling Parties . . . and the directors, officers, employees, agents, parents, affiliates, divisions and subsidiaries, and the successors or assigns of any of them, are hereby released from all claims,

11

However, this is not so that this court, sitting on appeal from a judgment of dismissal, can attempt to make sense of those terms. It is to demonstrate the numerous ambiguities in the Modified Consent Judgment, including ambiguities regarding the persons that qualify as Settling Defendants or Subsidiary Settling Parties (see Modified Consent Judgment, at pp. 1, 14–15, pars. 3, 31), and the circumstances under which the qualifying persons may be released from liability for claims arising either before or after the original date of the judgment (see Modified Consent Judgment, at p. 14, par. 30). These ambiguities cannot be resolved without allowing the parties an opportunity to present extrinsic evidence regarding the Modified Consent Judgment. (*New Livable California, supra*, 59 Cal.App.5th at p. 716 [" 'a court cannot . . . convert a demurrer into an incomplete evidentiary hearing in which the demurring party can present documentary evidence and the opposing party is bound by what that evidence appears to show' "]; *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 114 ["A court cannot determine based on only the four corners of a document, without

violations, actions, damages, costs, penalties, or causes of action set forth in Paragraph 29 [see *ante*] which may hereafter be asserted by Plaintiff or any other . . . entity whatsoever claiming by, through or in place of the Plaintiff." As to the latter, paragraph 30 states: "As to any claims, violations, actions, damages, costs, penalties, or causes of action which may arise or have arisen after the original date of entry of this Consent Judgment, compliance with those terms [of the warning program] of this Consent Judgment applicable to a Settling Defendant or Subsidiary Settling Party shall be deemed to constitute that entity's full and complete compliance with Proposition 65 . . . , provided, however, that no Settling Defendant or Subsidiary Settling Party (or the directors, officers, employees, agents, parents, affiliates, divisions, and subsidiaries, and the successors or assigns of any of them) shall be deemed to be in or have been in such compliance and released from future claims if it or an entity acting on its behalf had not, as of the date of the alleged violation, implemented the requirements applicable to them . . . ."

provisionally considering any extrinsic evidence offered by the parties, that the meaning of the document is clear and unambiguous"].)

Thus, because the proper interpretation of a written agreement raises disputable issues (*Gould, supra*, 31 Cal.App.4th at p. 1146; *StorMedia, supra*, 20 Cal.4th at p. 456, fn. 9), the sufficiency of the allegations in the FAC must be tested without drawing any conclusions as to the meaning or scope of the Modified Consent Judgment. (*Gould, supra*, 31 Cal.App.4th at p. 1146; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [" 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law' "].) The trial court was wrong to rely on its inherent authority to control litigation to resolve factual issues on demurrer *even assuming for the sake of argument* that the Modified Consent Judgment was a proper subject of judicial notice. (*Gould, supra*, at p. 1146; see *People v. Jennings* (2010) 50 Cal.4th 616, 684, fn. 34 ["Even assuming for the purposes of argument that we could take judicial notice of the existence, content and authenticity of these . . . materials, doing so would not establish the *truth* of critical factual matters asserted therein"].)

## IV. *No alternative grounds exist for upholding the trial court's dismissal of the FAC.*

We briefly address Fiskars's remaining arguments for dismissing the FAC on demurrer—to wit, that the legal doctrines of issue preclusion and exclusive concurrent jurisdiction provide a complete defense to Mateel's causes of action. (*Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201, 210–211 ["If a demurrer is sustained, we exercise our independent judgment on whether a cause of action has been stated as a matter of law, regardless of reasons stated by the trial court"].) Fiskars is mistaken for the same reason as the trial court: These arguments hinge on resolution of factual issues not suitable to a hearing on demurrer.

13

A. **Issue Preclusion.**

"*Issue preclusion* prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action. [Citation.]  Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN Holdings*).)  Issue preclusion applies if there was (1) a final adjudication (2) of an identical issue (3) that was actually litigated, (4) necessarily decided, and (5) asserted against one who was a party in the first suit or one in privity with that party. (*Id.* at p. 825; accord, *Hernandez v. City of Pomona, supra*, 46 Cal.4th at p. 511, fn. 3 [identifying same factors for applying collateral estoppel].)  In order for this doctrine to apply, each of these elements must be established.  (*Ibid.*) The party asserting issue preclusion has the burden of establishing the requirements for applying the doctrine.  (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.)

Fiskars claims this doctrine is a complete defense to the FAC.  Mateel disagrees, arguing there were no facts before the court on demurrer establishing, one, that the issues raised in the FAC relating to the adequacy of Fiskars's Proposition 65 warnings were identical to the issues actually decided in *Mangini* or, two, that Fiskars was a Settling Defendant or in privity with a Settling Defendant under the Modified Consent Judgment. Without these facts, Mateel continues, Fiskars could not meet its burden of proving the threshold requirements for application of this doctrine.  We agree.

On its face, the FAC reveals nothing that would establish that Mateel's claims are identical to those litigated and actually decided in *Mangini*. Contrary to Fiskars's suggestion, the FAC does not allege Fiskars violated

14

Proposition 65 by providing a warning that would be legal under the Modified Consent Judgment. Rather, the FAC alleges Fiskars provided a warning *different from or inferior to* the *Mangini* warnings and thereby failed to provide clear and reasonable warnings to individuals exposed to lead from Fiskars's products. (See FAC, at p. 2, par. 3 ["seek[ing] injunctive relief . . . to compel defendants to bring their business practices into compliance with section 25249.5 et seq. by providing to retailers to whom Fiskars sells leaded crystal, the information required to be provided to retailers in the June 2, 1993 consent judgment entered in . . . *Mangini*"].) Thus, nothing on the face of the FAC proves Mateel is attempting to relitigate the adequacy of any warning accepted as Proposition 65-compliant in *Mangini*. (See *DKN Holdings, supra*, 61 Cal.4th at p. 824.)

Nor was there evidence before the court on demurrer establishing that Mateel was asserting any claim against an entity that was a *Mangini* party or in privity with a *Mangini* party. (*Hernandez v. City of Pomona, supra*, 46 Cal.4th at p. 511.) Fiskars repeatedly insists it qualifies as a Settling Defendant or Subsidiary Settling Party. Yet, the 115 Settling Defendants are listed in exhibit 1 to the Modified Consent Judgment. None of the names of the Fiskars defendants in this case appears on exhibit 1. Moreover, while Fiskars insists that Fiskars "directly or indirectly" owns or is affiliated with one or more Settling Defendants, there is, again, no evidence of this in the record on demurrer. As Fiskars acknowledges in a footnote to the respondents' brief, the court did not rule on its request for judicial notice of various documents and Web sites purporting to show Fiskars's affiliation with certain of the Settling Defendants identified on exhibit 1, such as Waterford Crystal Limited and Waterford Wedgwood, PLC. Because these records were not judicially noticed below, we decline to consider them.

15

(*Donabedian v. Mercury Ins. Co.* (2004) 116 Cal.App.4th 968, 994 [grounds for demurrer must appear on the face of the complaint or be judicially noticeable].) Moreover, even if these records had been judicially noticed, we would consider only the fact that they exist, not that any statement they contain regarding Fiskars's business affiliations is true. (See *Mangini v. R. J. Reynolds Tobacco* (1994) 7 Cal.4th 1057, 1064 [denying request for judicial notice because "the existence of the newspaper article is irrelevant, and the truth of its contents is not judicially noticeable"], disapproved on another ground in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1275–1276.)

Finally, Fiskars ignores the public interest exception to the issue preclusion doctrine, whereby "[e]ven when the threshold requirements are satisfied, courts may not apply issue preclusion if considerations of policy or fairness outweigh the doctrine's purpose in a particular case." (*Bullock v. City of Antioch* (2022) 78 Cal.App.5th 407, 416.) Here, there were no facts before the trial court that would have allowed it to make a determination on demurrer as to whether this exception applies.

Accordingly, for the reasons stated, the issue preclusion doctrine provides no basis for upholding the judgment of dismissal.

## B. Exclusive Concurrent Jurisdiction.

"The doctrine of ' "exclusive concurrent jurisdiction" ' provides that when two or more courts have subject matter jurisdiction over a dispute, the court that first asserts jurisdiction assumes it to the exclusion of the others." (*BBBB Bonding Corp. v. Caldwell* (2021) 73 Cal.App.5th 349, 374.) "The [judge-made doctrine of exclusive concurrent jurisdiction] 'is based upon the public policies of avoiding conflicts that might arise between courts if they were free to make contradictory decisions or awards relating to the same controversy and preventing vexatious litigation and multiplicity of suits.

16

[Citation.] The rule is 'a judicial rule of priority or preference and is not jurisdictional in the traditional sense of the word,' in that it 'does not divest a court, which otherwise has jurisdiction of an action, of jurisdiction.' [Citation.] Because it is a policy rule, application of the rule depends upon the balancing of countervailing policies." (*Shaw v. Superior Court* (2022) 78 Cal.App.5th 245, 255–256.)

"[T]he rule of exclusive concurrent jurisdiction does not require absolute identity of parties, causes of action or remedies sought in the initial and subsequent actions. [Citations.] If the court exercising original jurisdiction has the power to bring before it all the necessary parties, the fact that the parties in the second action are not identical does not preclude application of the rule. Moreover, the remedies sought in the separate actions need not be precisely the same so long as the court exercising original jurisdiction has the power to litigate all the issues and grant all the relief to which any of the parties might be entitled under the pleadings." (*Plant Insulation Co. v. Fiberboard Corp.* (1990) 224 Cal.App.3d 781, 788.)

In briefing, the parties dispute whether the *Mangini* court has the power to bring them before it in order to litigate all the issues and to grant all the relief to which Mateel might be entitled under the FAC. Fiskars reads the Modified Consent Judgment broadly, arguing "the *Mangini* court has the power to grant complete relief on how to warn under Proposition 65 for Fiskars' Leaded Crystal Products." Fiskars relies on specific terms in the Modified Consent Judgment, including the terms granting the Attorney General exclusive authority to enforce future warning violations and automatically binding the Settling Defendants' successors and assigns.

Mateel responds that there is no evidence that Fiskars qualifies as a Settling Defendant or a Subsidiary Settling Party under the Modified

17

Consent Judgment and, even if there were, there is no provision in the Judgment authorizing the court to retain jurisdiction to resolve future disputes. Mateel directs us to legal authority requiring a request for retention of jurisdiction to be made by the parties in writing or orally before the court. (E.g., *Wackeen v. Malis* (2002) 97 Cal.App.4th 429, 433 ["like the settlement agreement itself, the request [for retention of jurisdiction] must be made orally before the court or in a signed writing . . . . If, after a suit has been dismissed, a party brings a [Code Civ. Proc.] section 664.6 motion for a judgment on a settlement agreement but cannot present to the court a request for retention of jurisdiction that meets [Code Civ. Proc., § 664.6's] requirements, then enforcement of the agreement must be left to a separate lawsuit"].)

As before, we need not resolve the parties' disputes over the scope or meaning of the Modified Consent Judgment, but merely point out that they are factual issues not properly resolved at the demurrer stage. (*Gould, supra*, 31 Cal.App.4th at p. 1146; *StorMedia, supra*, 20 Cal.4th at p. 456, fn. 9.) Accordingly, because we are unable to resolve whether the *Mangini* court "has the power to litigate all the issues and grant all the relief to which any of the parties might be entitled under the pleadings" (*Plant Insulation Co. v. Fiberboard Corp., supra*, 224 Cal.App.3d at p. 788), the applicability of the doctrine of exclusive concurrent jurisdiction is an issue that must be decided on another day.

## V.    *Conclusion.*

The trial court had no right to rely on its inherent authority to control litigation in order to consider a document that was not before it on demurrer and, even if the document had been, to resolve factual ambiguities in the document when the parties had no opportunity to present extrinsic evidence.

(*Ante*, pp. 8–13.)  Nor can the applicability of the doctrine of issue preclusion or exclusive concurrent jurisdiction be resolved at the demurrer stage, when the record remains undeveloped.  (*Ante*, pp. 13–18.)

Accordingly, having rejected each proposed ground for sustaining Fiskars's demurrer, we reverse the judgment of dismissal and remand the matter for further proceedings.  (*Fremont Indemnity Co. v. Fremont General Corp., supra*, 148 Cal.App.4th at p. 119 ["A demurrer must dispose of an entire cause of action to be sustained"].)  Given the procedural posture of the case, our opinion should not be read as deciding any other issue, including whether Mateel will be able to demonstrate its entitlement to relief in further proceedings.

## DISPOSITION

The judgment of dismissal is reversed.  On remand, the trial court shall vacate its order sustaining defendants' demurrer without leave to amend and enter a new order overruling the demurrer.

_____
Jackson, P. J.


WE CONCUR:


_____
Simons, J.


_____
Wiseman, J.*
A164638/*Mateel Environmental Justice Foundation v. Fiskars Living US, LLC*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19